**Margot Ellen REINER, Appellant,**

v.

**UNITED STATES of America, et al.**

No. 81–2143.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 3, 1982.

Decided Aug. 27, 1982.

As Amended Aug. 27, 1982.

Philip G. Sunderland, Washington, D. C., with whom Bruce J. Terris and James M. Hecker, Washington, D. C., were on the brief for appellant.

Diane M. Sullivan, Asst. U. S. Atty., Washington, D. C., with whom Stanley S. Harris, U. S. Atty., Kenneth M. Raisler and Michael J. Ryan, Asst. U. S. Attys., Wash-

ington, D. C., were on the brief for appellees.

Before TAMM and WILKEY, Circuit Judges, and ROBB, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge ROBB.

Concurring opinion filed by Circuit Judge WILKEY.

ROBB, Senior Circuit Judge:

In the District Court appellant Margot Ellen Reiner, an employee of the Department of State, challenged a decision of the Foreign Service Grievance Board. The decision recommended a remedy for administrative errors committed in 1972–1973 which on five successive occasions caused the Department's failure to consider Reiner for promotion. Reiner alleged the Board acted arbitrarily by basing relief on the promotion histories of Foreign Service Officers who entered the Service in 1971, rather than those who entered in 1966, when Reiner became a Foreign Service Staff Officer. The District Court held that the Board did not err by considering Reiner a member of the class of 1971, and ordered summary judgment in favor of the United States and the Secretary of State. We affirm in part and reverse in part.

A somewhat detailed discussion of the Foreign Service personnel system is necessary to an understanding of this dispute. The Foreign Service consists of the federal employees, primarily in the State Department, who formulate and execute the foreign policies of the United States. Under the Foreign Service Act of 1946,[1] Foreign Service personnel are classified into distinct categories as follows:

The personnel of the Service shall consist of the following categories of officers and employees:

(1) Chiefs of mission, who shall be appointed or assigned in accordance with the provisions of section 901 of this title;

(2) Foreign Service officers, who shall be appointed in accordance with section 906 of this title, including those serving as chiefs of mission;

(3) Foreign Service Reserve officers, who shall be assigned to the Service on a temporary basis from Government agencies or appointed on a temporary basis from outside the Government in accordance with the provisions of section 922 of this title, in order to make available to the Service such specialized skills as may from time to time be required;

(4) Foreign Service staff officers and employees, who shall be appointed in accordance with the provisions of section 936 of this title and who shall include all personnel who are citizens of the United States, not comprehended under paragraphs (1), (2), (3), and (6) of this section, and who shall occupy positions with technical, administrative, fiscal, clerical, or custodial responsibilities;

(5) Alien clerks and employees, who shall be appointed in accordance with the provisions of section 946 of this title; and

(6) Consular agents, who shall be appointed in accordance with the provisions of section 951 of this title.

22 U.S.C. § 861 (1976) (repealed 1980). Each category is governed by a separate pay scale, see 22 U.S.C. §§ 866–877, and by differing statutory requirements with respect to appointment, assignments, transfer, tenure, and citizenship. See 22 U.S.C. §§ 906–968.

Two categories are particularly important here: Foreign Service Officers, generally

---

1. The Foreign Service Act of 1946, ch. 957, Title I, §§ 111 et seq., 60 Stat. 999 (1946) (codified at 22 U.S.C. §§ 801 et seq.) (1976). Personnel practices and requirements for the Foreign Service are currently governed by The Foreign Service Act of 1980, Pub.L.No.96–465, 94 Stat. 2074 (1980) (codified at 22 U.S.C.

§§ 3901 et seq.) (Supp. IV 1980). However, "[a]ny grievances, claims, or appeals" which were filed under the 1946 Act continue to be governed by that statute. See 22 U.S.C. § 4172(a) (Supp. IV 1980). This case was filed under the 1946 Act, and we refer to the 1946 statute throughout.

referred to as "FSOs"; and Foreign Service Staff Officers, or "FSSOs". Foreign Service Officers play the central role in day-to-day implementation of foreign policy. As described by the State Department, FSOs

carry out the foreign policies of the United States under the direction of the Secretary of State, participate in the formulation of those policies, represent the United States in relations with other governments and with international organizations, keep the U. S. Government informed of developments abroad, and protect American interests in foreign countries.

Introduction to 1971 Foreign Service Officer Examination 6. (J.A. 33) Foreign Service Officers "fill most of the more responsible positions in the [State] Department, aside from those requiring a high degree of technical or professional specialization in fields such as medicine, science, electronics, law, etc." Introduction to 1972 Foreign Service Officer Examination 5. (J.A. 35) The category of Foreign Service Staff Officer or "FSSO" no longer exists, having been abolished by the Foreign Service Act of 1980.[2] At the time of the events in this case, Department regulations described the category as

A corps of Staff Officers complementary to Foreign Service Officers and Foreign Service Reserve Officers, to give depth, stability, and continuity to the Foreign Service as a whole and to provide technical skills and experience not usually found in officers who are available to the Service in general foreign affairs work.

Foreign Affairs Manual Circular No. 255 at 2 (November 25, 1964). (J.A. 37) In 1965 the Foreign Service permitted FSSOs to perform duties previously performed only by FSOs, and established a new Junior FSSO Service designed to attract "highly motivated and well-qualified young men and women from colleges and universities

....." *Id.* at 5. (J.A. 40) Consequently, in the time period relevant here, FSSOs often had duties entailing substantial responsibility.

Promotion in the Foreign Service operates, for the most part, according to a unique system of competitive ranking based on relative performance among employees in the same class. Under the 1946 Act the procedure for promotion of FSOs was as follows. Periodically, "selection boards" appointed by the Secretary of State convened to review the official performance files of officers in the same category and class. 22 U.S.C. § 993(a). These files were assembled by the Director General of the Foreign Service, and contained reports from supervising officers, records of commendations or disciplinary actions, and all other information relating to the ability and conduct of the officers under evaluation. *Id.* § 986. The selection board ranked the officers according to their performance relative to one another, and then submitted the list to the Secretary of State. *Id.* § 993(a). Promotions were then made by taking officers from the top of the list until the staffing requirements for the higher class were met. For example, if the Department decided to promote fifteen FSOs from Class 7 (FSO–7) to Class 6 (FSO–6) in any year (lower class numbers representing higher rank and salary), the officers receiving promotions would be the fifteen individuals ranked highest by the selection board which reviewed FSO–7s. Those FSOs who did not advance to higher classes within prescribed periods of time were "selected out," *i.e.*, retired from the Foreign Service.

The promotion procedures for Foreign Service Staff Officers were essentially the same as for Foreign Service Officers. The only differences were that the use of selection boards for FSSOs was established by regulation, not by statute;[3] and unlike

---

**2.** H.R.Rep.No.992 (Part 1), 96th Cong., 2d Sess. 14 (1980).

**3.** Section 1016 of the 1946 Act states, "[a]ll promotions of staff officers . . . to a higher class shall be made . . . on the basis of per-

formance and merit in accordance with such regulations as the Secretary may prescribe." 22 U.S.C. § 1016. According to administrative notices issued periodically, FSSOs were reviewed by selection boards in the same fashion

FSOs, FSSOs were not subject to "selection out." (Appellee's Br. at 3 n.3)

Margot Ellen Reiner entered the Foreign Service in 1966 as a Foreign Service Staff Officer, Class 7 (FSS–7). She received a promotion to FSS–6 in 1967, and remained in the program for approximately five years, serving in Buenos Aires, Argentina; as a "Passport and Citizenship Officer" in Lima, Peru; and as a "personnel officer" in Saigon, Vietnam. In 1970 appellant sought to become a Foreign Service Officer. She took the examinations administered to all persons seeking appointment as an FSO, *see* 22 U.S.C. § 911, passing the written examination in December 1970 and the oral examination on October 21, 1971. She was then classified as a Foreign Service Officer, Class 7 (FSO–7).

For more than two years following her appointment Reiner did not receive a promotion. Beginning in the summer of 1972 and through 1973, Reiner sent letters to State Department officials expressing her concern that possibly her performance file had not been submitted to the proper selection boards. She received no direct response to her inquiries. The Department did submit her file to the January 1974 selection board, which recommended her promotion from FSO–7 to FSO–6, effective in June 1974. Reiner continued to maintain, however, that her career had been seriously prejudiced by administrative errors in 1972–1973.

In January 1976 Reiner filed a formal grievance pursuant to 22 U.S.C. §§ 1037 *et seq.* In May 1976 the Department acknowledged for the first time that in 1973 Reiner's performance file had not been submitted to two selection boards that should have considered her for promotion. The Department offered to extend by one year the time ("time-in-class") within which Reiner would have to reach Class 5 or be selected out, but did not offer any retroactive promotions. At Reiner's urging the Department investigated further and discovered that her performance file had not been submitted to three 1972 selection

boards in addition to the two 1973 selection boards already acknowledged. In June 1976 the Department offered to make Reiner's promotion to FSO–6 (which became effective in June 1974) retroactive to May 1973, but she refused the offer.

Reiner retained counsel and filed a grievance with the Foreign Service Grievance Board on August 6, 1976, alleging that the Department's failure to submit her file to five consecutive selection boards prejudiced her career. She requested that the Grievance Board recommend retroactive promotions that would place her at the level of FSOs who entered the Foreign Service in 1966 and whose performance had been of a quality similar to hers. Specifically, Reiner asked that her promotion to FSO–6 be made retroactive to May 1972, and that she receive promotions to FSO–5 retroactive to January 1974, FSO–4 retroactive to May 1975, and FSO–3 effective immediately. After a hearing the Grievance Board issued a decision rejecting most of Reiner's requests for relief. The Board adopted the terms of a settlement offer made by the Department at the beginning of the hearing, which made Reiner's promotion to FSO–6 retroactive to May 1972 and extended her time-in-class to two years.

On April 7, 1978 Reiner filed an action in the District Court alleging that the procedures and standards applied by the Board violated the Foreign Service Act of 1946, State Department regulations, and the due process clause of the Fifth Amendment. On April 30, 1979 the District Court vacated the Grievance Board's decision, holding that the Board "erred in allocating to the plaintiff the burden of showing by 'compelling reasons' that, but for the Department's administrative errors, she would have received a promotion, or a series of promotions." *Reiner v. United States*, Civil Action No. 78–0616, slip op. at 6 (D.D.C. April 30, 1979) ("Reiner I"). (J.A. 14) The court stated:

Elementary conceptions of justice and public policy require that the wrongdoer bear the risk of the uncertainty in com-

as FSOs. *See* H.R.Rep.No.992 (Part 1), 96th    Cong., 2d Sess. 50 (1980).

puting damages which his wrong has created .... Thus, in the instant case, the Department cannot defeat plaintiff's requests for relief in the form of retroactive promotion with its bare assertion that, because of its administrative error, it is impossible to know certainly whether plaintiff would have received the series of promotions she requested, or any promotion at all.

*Id.* at 7. (J.A. 15) The District Court held that the initial burden was on the plaintiff to show that the Department's failure "was a substantial factor in her failure to be promoted" and that the burden should then have shifted to the Department to establish "by a preponderance of the evidence that, even in the absence of the Department's administrative error, plaintiff would not have been promoted." *Id.* (J.A. 15) Accordingly, the District Court remanded the case for rehearing by another panel of the Foreign Service Grievance Board.

A *de novo* hearing was held before a new panel of the Board on February 4, 1980. Because the Department conceded that retroactive promotions were due Reiner (J.A. 135) the central issue before the Board was that of appropriate relief. Reiner maintained, as she had earlier, that the relevant group for comparison with respect to promotion histories was the class of Foreign Service Officers who entered the Foreign Service in 1966, referred to as the "class of 1966". Comparing herself to those FSOs, Reiner requested that her promotion to FSO–5 (granted October 22, 1978 while *Reiner I* was pending) be made retroactive to January 1974; that she be promoted to FSO–4, retroactive to May 1975; and that she be promoted to FSO–3, retroactive to April 1977. On July 18, 1980 the Grievance Board issued an opinion recommending retroactive promotions less extensive than those sought by Reiner. *In re Margot E. Reiner*, No. 76–342-State-180 II (July 18, 1980) ("FSGB Decision"). (J.A. 130) The Grievance Board reached a number of conclusions, the most important being that Reiner was to be considered a member of the class of 1971, the year she became an FSO, rather than 1966, the year she started as an FSSO. The Board said:

[W]e do not believe that the grievant is properly viewable as a member of the class of 1966. This is not to say that her service with the Department in the 1966–1971 period should be ignored—any more, presumably, than promotion panels would ignore such service. But to treat the persons who entered FSO service in 1966 as Reiner's peer group would be to proceed contrary to the facts. For, in contrast to those who served as FSOs in the 1966–1971 period, Reiner did not in that period have an appointment leading to Service-wide qualifications as a political, economic or commercial functionary. She did consular work and she shared some instructional classes with members of the 1966 FSO class. But she did not compete with them—either from the standpoint of ranking or from the standpoint of selection-out. To state it directly and conclusively, Reiner *could not* have received FSO promotions in the 1966–71 period—though about half of the members of the class of 1966 progressed to FSO–5 in that period—for she was not in fact an FSO. Her status in that capacity commenced in 1971. We think it unquestionably follows that Reiner is to be viewed as a member of the class of 1971 for the purpose of the comparative tracings which must here be undertaken.

FSGB Decision at 17–18 (footnote omitted). (J.A. 141–42) The Board also found that Reiner's performance had been "generally excellent"; the Board disagreed with the Department's characterization of her performance as "average". FSGB Decision at 18. (J.A. 142)

The Grievance Board then turned to each of Reiner's specific requests for relief. The Board refused to promote Reiner to FSO–3, reasoning that the primary ground for such a promotion would be consideration of Reiner as a top-ranking member of the class of 1966, an improper comparison in the Board's view. Comparing her to the class of 1971 instead, the Board held "it would be wholly incorrect to place her in FSO–3" because "no one from that class has at-

tained that rank." FSGB Decision at 19 (J.A. 143) The Board agreed that Reiner should be promoted to FSO–4; however, it refused to recommend that the promotion be made retroactive to 1975, and ruled that October 1978 was the proper effective date. Again, the Board reasoned that such a promotion could have been achieved only by a member of the class of 1966, and that no members of the class of 1971 achieved FSO–4 in 1975. The Board similarly rejected a 1977 effective date, stating "[t]he percentage of Reiner's class-of-1971 peers who attained the FSO–4 level in 1977, if not zero, is properly assumed to have been of the smallest sort. We cannot correctly place Reiner in the truly outstanding segment of her peer group." FSGB Decision at 22. (J.A. 146) The Board set October 1978 as the date when a "generally excellent" 1977 class member most likely would have been promoted to FSO–4. Applying similar reasoning, the Board established March 1975 as the date on which Reiner would have been promoted to FSO–5, since "some members of the class of 1971 reached the FSO–5 level in 1975." FSGB Decision at 23. (J.A. 147) The Board quickly rejected Reiner's request that her promotion to FSO–6 (retroactive to October 9, 1972 as ordered by the Grievance Board prior to *Reiner I*) be made retroactive for an additional period to May 1972; the Board said that the relief already granted "represents a movement from FSO–7 to FSO–6 within less than a year. No one from the class of 1971 fared any better." FSGB Decision at 24. (J.A. 148) Finally, the Board accepted Reiner's requests that she receive "appropriate training" and that she be protected against selection-out for five years. *Id.*

Reiner appealed again to the District Court, arguing that the Board erred in refusing to consider her a member of the FSO class of 1966. On September 30, 1981 the District Court rejected Reiner's contentions

and dismissed the case. *Reiner v. United States*, Civil Action No. 81–0794, slip op. at 5 (D.D.C. Sept. 30, 1981) ("*Reiner II*"). (J.A. 7) The court ruled that its earlier opinion in *Reiner I* did not bind the Grievance Board to consider Reiner a member of the class of 1966 because that issue was not presented in the first case. *Id.* at 2. The District Court also rejected Reiner's arguments that her training, experience, and function within the Foreign Service made her a member of the FSO class of 1966. The court referred to the Grievance Board's discussion of the issue, FSGB Decision at 17–18 (J.A. 141–42), and noted that the court's role in reviewing personnel decisions is "limited", *Reiner II, supra*, at 3–4. (J.A. 5–6) This appeal followed.

Under the judicial review provisions of the 1946 Foreign Service Act, 22 U.S.C. § 1037c (1976), final actions of the Foreign Service Grievance Board are subject to review "in the District Courts of the United States, in accordance with the standards set forth in chapter 7 of Title 5. Section 706 of Title 5 shall apply without limitation or exception." The District Court applied both the "arbitrary and capricious" test of 5 U.S.C. § 706(2)(A) and the "substantial evidence" test of 5 U.S.C. § 706(2)(E), noting that the court would not substitute its own judgment for that of the agency. *Reiner II, supra*, at 3–4. (J.A. 5–6) Certainly the "arbitrary and capricious" test applies as it does to any agency subject to section 706. The applicability of the substantial evidence test is less clear,[4] but because Reiner does not argue the lack of substantial evidence to support the Board's decision we need not rule on the question.

Reiner's central argument is that the Board's decision not to consider her a member of the FSO class of 1966 was arbitrary and capricious. As shown in the excerpts

---

4. The substantial evidence test applies to agency adjudication only after a trial-type hearing required by statute to be on the record. *See* 5 U.S.C. §§ 553(c), 706(2)(E). The 1946 Act requires a hearing in cases involving disciplinary action or selection-out, or "which in the judgment of the board can best be resolved by a hearing or by presentation of oral argument." 22 U.S.C. § 1037a(4). We express no opinion as to whether a hearing ordered by the Board in an exercise of its discretion is "required by statute to be made on the record after an opportunity for an agency hearing" within the meaning of the Administrative Procedure Act.

above, the Board refused to consider the 1966 FSO class as Reiner's peer group for two reasons. First, in the 1966–1971 period Reiner simply was not an FSO. Her status was that of an FSSO, which is not "an appointment leading to Service-wide qualifications as a political, economic or commercial functionary." FSGB Decision at 17. (J.A. 141) Second, although Reiner "did consular work and ... shared some instructional classes with members of the 1966 FSO class," she "did not compete with them—either from the standpoint of ranking or from the standpoint of selection-out", *i.e.*, as an FSSO she was not subject to the "selection-out" process. *Id.* It is undisputed that Reiner was not in fact an FSO until 1971. Considering the differences in statutory requirements and salary,[5] Reiner cannot and does not contend that the two categories are identical. She argues vigorously, however, that from 1966–1971 she competed with FSOs in every important respect: training, assignments, evaluation, and promotion.

Each of Reiner's comparisons is flawed. As for training, Reiner observes that the Basic Junior Officer Course she completed when appointed an FSSO "is mandatory for all newly appointed junior Foreign Service and USIA officers," and that she was considered a "full participant" in the FSO orientation. (Appellant's Br. at 14–15, quoting her Training Evaluation Report (June 22, 1966) (J.A. 68)) She ignores however that virtually all newly appointed Foreign Service employees, with the exception of "Alien Clerks and Employees," attend the basic orientation course along with FSOs. In any event, Reiner's attendance at training sessions while an FSSO has little relevance to the question of appropriate relief for mistakes which occurred after she became an FSO.

In terms of assignments, Reiner argues that all the positions to which she was

assigned as a Junior FSSO "were FSO positions ... often at a level above her personal grade." Reiner may have performed some of the same tasks as FSOs, but that fact has little significance in the "rank-in-person" system under which the Foreign Service operates. As noted by a congressional committee during the 1980 revision of the Foreign Service Act,

> [The Foreign Service] is a disciplined, professional Service based on a rank-in-person system similar to that followed by the military. In that system, rank and promotions attach to the individual, not to the position as in the civil service system. Therefore, promotions and assignment are separate occurrences in the rank-in-person system. This reflects the fundamentally different conditions of service between the civil service and the Foreign Service, particularly the need for frequent rotation from position to position.

H.R.Rep.No.992 (Part 1), 96th Cong., 2d Sess. 3 (1980). In other words the point of a rank-in-person system is that it allows frequent shifts of personnel while keeping promotion and rank separate. Reiner's argument that she occupied "FSO positions" and should therefore be considered a member of the 1966 FSO class is a *non sequitur* in a rank-in-person regime.

Finally, Reiner maintains that she "competed" with 1966 FSOs in terms of evaluation and promotions from 1966–1971. Close examination of her brief reveals, however, that the most Reiner alleges is that she was evaluated by "the same selection boards" that evaluated FSOs. (Appellant's Br. at 20; *see also id.* at 19–21) This implies only that the same people who ranked certain classes of FSOs also ranked classes of FSSOs, an unexceptional fact with little bearing on the retroactive promotions due

---

5. For example, FSOs were appointed by the President with the advice and consent of the Senate, 22 U.S.C. § 906; FSSOs were appointed by the Secretary of State, 22 U.S.C. § 936. According to the 1976 United States Code, the FSO–4 annual salary was $24,308; the FSSO–4 salary was $16,096. *See* 22 U.S.C. §§ 867, 870 (1976). *See also* H.R.Rep.No.1432, 96th Cong., 2d Sess. 113 (1980) U.S.Code Cong. & Admin. News 1980, p. 4419 (differentials in salary immediately before 1980 amendment).

Reiner. With one exception [6] (and that contested by the Department), Reiner never asserts that these selection boards compared FSSOs against FSOs, ranked her in relation to FSOs, or subjected her to the risks of selection-out based on comparisons to FSOs. Indeed Reiner acknowledges that she "did not directly compete with FSOs in the 1966–71 period since she was an FSSO and therefore not eligible for the same promotions as FSOs in the class of 1966." (Appellant's Br. at 32) This point being conceded, all that remains is the assertion that FSOs and FSSOs were evaluated according to the same procedures and occasionally by the same evaluators. It does not follow that Reiner was a member of the class of 1966, so that her promotions must track the advancement of members of that class.

▇ In sum, Reiner presents no valid reason to question the Board's judgment that she was not a member of the FSO class of 1966. The Board's decision was based on Reiner's status as an FSSO in 1966; the fact that she did not become an FSO until 1971; and her lack of direct competition with FSOs during the period from 1966–1971. The Board's conclusion was thoroughly reasonable. We affirm the District Court on the issue of Reiner's membership in the class of 1966.

Reiner's second line of attack is that the Board acted arbitrarily in relying on the promotion histories of the class of 1971 because she "had a far greater potential for promotion than most, if not all, of the Class of 1971." (Appellant's Br. at 23) Reiner argues that because she had been in the Foreign Service for five years when she became an FSO–7 in 1971, (1) she had already demonstrated her ability and obtained valuable on-the-job experience, and (2) she was immediately eligible for promotion

to FSO–6, unlike the other members of the class of 1971 who had to serve an eighteen-month probation period, and thus should not have been compared to the class as a whole. Reiner maintains that the Board "effectively ignored" her five years of Foreign Service employment prior to her appointment as an FSO, and thereby acted arbitrarily.

▇ We cannot say that the Board acted arbitrarily in refusing to give more weight to the value of Reiner's service as an FSSO. This is precisely the type of issue on which a reviewing court should not substitute its judgment for that of the agency. Moreover, Reiner did receive some credit for her experience. After passing the FSO examination in 1971, Reiner was appointed an FSO–7 pursuant to 22 U.S.C. § 911, which permits appointment of new FSOs directly to Class 7 (rather than the usual Class 8) "when in [the Secretary of State's] opinion, their age, experience, or other qualifications make such appointment appropriate." 22 U.S.C. § 911(b). This appears to be the way in which prior service is recognized under the 1946 Act, and Reiner received the benefits of the higher initial position. Reiner may think this is inadequate recognition for five years of valuable training and experience, but her complaint lies with the Foreign Service personnel system not the Board's handling of her grievance.

Reiner's second point, however, presents a flaw in the Board's analysis. Newly appointed FSOs generally must serve an eighteen-month probationary period during which time they are not eligible for promotion. The Department acknowledged that Reiner's prior service as an FSSO fulfilled her probation requirement, and that she would have been immediately eligible for

---

**6.** In her reply brief, Reiner says "plaintiff was ranked along with Foreign Service Officers by the same selection boards. The government admitted this fact in the district court." (Appellant's Reply Br. at 6 n.1) The document to which Reiner refers, however, says the defendants

> [A]dmit that Junior FSSO officers may have from time to time been evaluated and ranked along with Foreign Service Officers by the

same selection boards but deny any inference that suggests that members of the two corps were competing with each other. While the board may have applied similar criteria in evaluating performance of the probationary officers in the two corps, the two corps did remain separate entities.

Defendant's Response to Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ¶ 10. (J.A. 26)

promotion from FSO–7 to FSO–6, eighteen months before most members of the class of 1971 became eligible. *See* Plaintiff's Statement of Material Facts as to Which There is no Genuine Issue ¶ 18 (J.A. 22); Defendant's Response to Plaintiff's Statement of Material Facts ¶ 18 (J.A. 27). Consequently, had the Department properly submitted Reiner's performance file in 1972–1973, she could have been evaluated by four selection boards while other members of the class of 1971 were still on probation.[7] In other words, Reiner should have had an eighteen-month "head start" on the other FSOs who entered the Service in 1971.

The analysis employed by the Board largely obviates the advantage Reiner would have had absent the Department's error. Throughout its opinion the Board analyzes each retroactive promotion Reiner requests in terms of the number of 1971 class members who achieved that rank as of the date Reiner seeks. The Board then observes in each instance that relatively few, if any, 1971 class members reached such a position by such a date, and the Board concludes that only the most superior members of the class (not including Reiner) could have achieved the position. This analysis fails to note that most 1971 class members started to receive promotions approximately eighteen months after Reiner would have been eligible for promotion if the Department had not failed to submit her performance file.[8] By using statistics from the class of 1971 as a whole, the Board failed to recognize the critical distinction between Reiner and most members of the class of 1971, *i.e.*, that she was eligible for promotion long before her colleagues.

█ We think the Board's failure to recognize Reiner's immediate eligibility for promotion upon becoming an FSO was arbitrary and capricious. The 1971 statistics may have provided a convenient benchmark for assessing the retroactive promotions due Reiner, but in opting for convenience the

Board disregarded an important distinction between Reiner and the class of 1971. The emphasis in a remedy award of this type must be on restoring the injured party to the position she would have occupied absent the administrative error. The Board's decision fails to restore Reiner to that position. Of course, as the Board noted, "redress in the kind of situation here presented cannot be devised in wholly exact fashion." FSGB Decision at 18. (J.A. 142) Our difficulty however is not with the precision of the Board's calculations but with the premise upon which they were based. Considering the gravity of the Department's initial error, its resistance to Reiner's claims for relief, and that the Department bears the burden of proof, *Reiner I, supra,* at 7 (J.A. 15), we cannot overlook this flaw in the Board's methodology.

The question of appropriate relief still remains. As we have said, we reject Reiner's contention that the class of 1966 is the proper basis for comparison. How best to recognize Reiner's special circumstances we leave to the Foreign Service Grievance Board on remand. Because the Board's present reliance on promotion histories of the 1971 FSO class fails to account for Reiner's unique position, we must reverse the District Court on that narrow point and remand to the Board for additional proceedings consistent with this opinion. We do not mean to suggest that Reiner must be awarded retroactive promotions pre-dating by eighteen months those achieved by comparable members of the 1971 FSO class. We leave it to the Grievance Board to assess the actual effect Reiner's earlier eligibility for promotion would have had on her advancement absent the Department's errors. We are confident that the Board will be able to adjust its calculations or devise another method of awarding retroactive promotions that will adequately recognize Reiner's early eligibility for promotion. In all other respects we approve the Board's

---

7. *See* Appellant's Br. at 32–33.

8. The class of 1971 entered the Foreign Service in September 1971. No class member received

a promotion until eighteen months later in March 1973. (*See* J.A. 100–03)

decision and affirm the judgement of the District Court.

*So ordered.*

WILKEY, Circuit Judge, concurring:

I join in the judgment and opinion of the court. I also write separately to amplify several points touched upon by the court's opinion.

Margot Ellen Reiner asks us to correct an egregious administrative error, one which impeded her promising career in the Foreign Service. Officers in the Foreign Service are entitled to have their promotion considered periodically by selection boards. After Reiner entered the Foreign Service in 1971, however, the State Department failed to submit her file to the first five boards which should have considered her for promotion. Reiner appealed first to the State Department, then to the Foreign Service Grievance Board, asking that this error be corrected.

The task of the Grievance Board was to ensure that Reiner be placed in the position she would have reached had her file been considered by those five boards. Usually, the remedy in cases such as Reiner's is to give the grievant the same promotions achieved by members of her "class" with comparable Foreign Service records—*i.e.*, the promotions achieved by fellow officers who entered the Foreign Service with the grievant and performed as well as she.

This method of comparison cannot be applied to Reiner's case. Her career differs from that of the other members of her "class" in two respects. First, unlike most Foreign Service Officers, Reiner entered the Foreign Service with five years of experience as a Foreign Service Staff Officer. During these five years, she performed tasks usually assigned to Foreign Service Officers, and her performance is described as "excellent." Thus, she brought to the Foreign Service valuable experience and a

proven record, which most novice Foreign Service Officers do not offer.

Second, because of her experience as a Foreign Service Staff Officer, Reiner was eligible for promotion immediately upon her entry into the Foreign Service. Other Foreign Service Officers, by contrast, must serve an eighteen month probationary period before they are considered for promotion.

For these two reasons, the Grievance Board could not determine Reiner's appropriate level of promotion simply by comparing her with other members of the class of 1971, the class with which she entered the Foreign Service. The court holds here that the Grievance Board erred in proceeding on the basis of such a comparison.[1]

Reiner contends that the Board's decision must be corrected to take account of the two differences between her and other members of the class of 1971. Initially, Reiner argues that the Board should correct its decision for the fact that Reiner did not serve an eighteen month probationary period. As the court holds, we must remand to the Board so that this correction may be made.[2]

I would emphasize further that the Board's failure to take the probationary period into account may have harmed the plaintiff in two respects. First, Reiner should have been considered for promotion eighteen months before her fellow entrants into the Service. Indeed, she should have been evaluated by four selection boards while other members of her class were still on probation.[3] Second, Reiner performed eighteen months of full service in 1971–72, rather than the less important probationary service required of novice entrants. Her record for the first eighteen months would thus have presented to the selection boards a calibre of service higher than that of other class members. For example, Reiner completed an assignment in an FSO–4 position while other members of the 1971 class

1. Opinion of the Court at 1025.

2. *Id.* at 1024–1026.

3. *Id.* at 1024.

were receiving their initial training.[4] The Grievance Board on remand should take care to consider both aspects of Reiner's record in fashioning appropriate relief.

To demonstrate how this might be done, I consider her requested promotions in turn.

First, Reiner agrees with the Grievance Board that her promotion to FSO–6 should have occurred in October 1972;[5] she apparently does not ask for reconsideration of this part of the Board's decision in light of her 1966–1971 experience.

Second, in considering Reiner's promotion from FSO–6 to FSO–5, the Grievance Board purported to "giv[e] some credit for Reiner's service as an FSSO ...."[6] Reiner does not question that the Board in fact did give weight to her previous record. Instead she asks that the Board "apply[ ] [the] same time-between-class period" to her as to other members of the class of 1971, who were promoted from FSO–6 to FSO–5 in two years.[7] Again, Reiner asks merely that her promotion be advanced to take into account her eighteen month head start over her peers.

With respect to promotion from FSO–5 to FSO–4, Reiner acknowledges that the Board "[gave] recognition to plaintiff's 1966 to 1971 Foreign Service experience."[8] She argues only that "the Board completely neglected the *other* critical factor which distinguishes her from the members of the Class of 1971—her entry into the FSO promotion process 18 months earlier than any of the 1971 class members."[9]

Finally, Reiner argues, on the basis of the promotion history of the class of 1966,[10] that she should be promoted to FSO–3 within a decade of the date when she was first available for promotion.[11] The propriety of the ten-year figure does not depend upon Reiner's FSSO service: it is derived from a comparison to officers who entered the class of 1966 without such experience.[12]

Therefore, once we find that the Board did not appropriately take the eighteen month probationary period into account, plaintiff's contentions as to her FSSO experience become in effect merged into this.[13]

4. *See* Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue at 3 (1 June 1981), Joint Appendix (J.A.) at 20; Defendant's Response at 2, J.A. at 26.

5. *See* Appellant's Brief at 34 and n.21; Foreign Service Grievance Board Decision at 23–24 (18 July 1980), J.A. at 147–148.

6. Foreign Service Grievance Board Decision at 23, J.A. at 147.

7. Appellant's Brief at 34 and n.22.

8. *Id.* at 35.

9. *Id.* (emphasis added).

10. With respect to the promotion to FSO–3, comparison to the class of 1966 is arguably appropriate because no comparison to the class of 1971 is possible: members of the 1971 class who served the eighteen month probationary period have not yet been available for promotion for ten years.

11. *See* Appellant's Brief at 36–37.

12. *See* 1979 Class of 1966 Statistics (7 Sept. 1979), J.A. at 113. It should be noted that the Board on remand reaches this issue for this first time: Reiner could not make this argument to the Board in 1980, since she had not been eligible for promotion for ten years at that time.

13. It is thus unnecessary to speculate that Reiner "did receive some credit for her experience" because she was classified, pursuant to 22 U.S.C. § 911 (1976), at FSO–7 rather than FSO–8 upon entry into the Foreign Service. *See* Opinion of the Court at 1024. The Grievance Board does not mention this argument as a basis for its decision; and its treatment of Reiner's prior service appears sufficiently justified for the reasons discussed above.

Moreover, I doubt that, as a matter of law, Congress intended section 911 to reward prior service such as that of Reiner. The Foreign Service Act, which includes this provision, was passed in 1946. The Foreign Service Act of 1946, ch. 957, 60 Stat. 999 (1946) (codified at 22 U.S.C. §§ 801–1159 (1976)). But the program from which Reiner entered the Foreign Service was first established in 1964. *See* Opinion of the Court at 1018–1019; Foreign Affairs Manual Circular No. 255 at 1–5 (25 Nov. 1964), J.A. at 36–40. Moreover, that program was designed to attract talented young men and women who would perform Foreign Service tasks and who might later have an opportunity to enter the Service. *Id.* It seems unlikely that Congress contemplated this form of prior service when it drafted section 911.

Indeed, section 911 is apparently now invoked to reward a miscellany of prior training and experience. Most of the class of 1971

Remand to correct for Reiner's eighteen month head start authorizes all the relief the plaintiff has requested. On this understanding, I concur with the Court's holding that we remand for reconsideration of that issue alone.

I am confident that the Board on remand will do justice to the plaintiff's outstanding record of service. On that basis, I join the judgment and opinion of the court.

entered with FSO–7 classification. *See* Interrogatory No. 19, 99th Junior Officer Class (tabulation of promotional history submitted at hearing of 19 Nov. 1976), J.A. at 100–03. It would be fortunate if over 80% of our entering Foreign Service officers brought with them the equivalent of six years of "excellent" performance in Foreign Service responsibilities, but I doubt that this is in fact the case. In any event, it is for the Board, not this court, to make such findings in the first instance.