George D. **KOORKANIAN**, Plaintiff,

v.

George P. **SCHULTZ**, Defendant.

Civ. A. No. 84–1984.

United States District Court,
District of Columbia.

Jan. 16, 1987.

Susan Z. Holik, American Foreign Service Ass'n, Washington, D.C., for plaintiff.

Diane Sullivan, Asst. U.S. Atty., for defendant.

## MEMORANDUM

SPORKIN, District Judge.

This case is before me on cross motions. The plaintiff, George Koorkanian, a long

time (over 30 years) and valued employee of the State Department is appealing from a final adverse decision of the State Department's Foreign Service Grievance Board ("the Board"). The defendant. is moving pursuant to Rule 7(b)(1) of the Federal Rules of Civil Procedure to affirm the decision of the Board on the basis that there exists substantial evidence in the record to support that decision. After careful consideration of the pleadings and the entire record herein, and a full hearing on the merits, I find for the plaintiff and remand this action for further proceedings not inconsistent with this opinion.

It is regrettable that the State Department has not been able to resolve this case on an administrative basis. The basic facts are not in dispute. Plaintiff entered the foreign service as a traveling courier in January, 1956. Although in the early stages of his career his promotions were rapid, plaintiff's promotion history dramatically changed in 1969, when his position was reclassified. Subsequent to the Department's 1969 reclassification, the plaintiff received no promotions until 1980. The Board found—and defendant does not dispute—that plaintiff's non-promotion travail was the result of the Department's failure to notify him of the effects of the 1969 reclassification.

In February 1980, plaintiff sought to remedy his plight by filing a grievance with the Department. Fifteen months later, the Department issued a decision denying his grievance. Plaintiff promptly appealed the adverse action to the Board, which found for him on the merits but declined to provide him any relief. Concerning the merits of his complaint, the Board found that the plaintiff was diligent in attempting to obtain career advancement, but was thwarted in his efforts by the Department. Specifically, the Board wrote:

> The record contains abundant evidence that the Department felt a general responsibility to inform employees about personnel changes that were being made and that were being proposed in connection with efforts to reform the personnel

system: articles were published in the Department's newsletter, open meetings were held at which questions could be asked, employees were urged to seek out counselors and inform themselves about career opportunities. The evidence is that Koorkanian responded in appropriate ways to such general information about career advancement: he consulted many people about his failure to gain promotion, including his supervisors and the career counselor designated to counsel couriers; he applied for the FAS [Foreign Affairs Specialist] program and was given an FSRU [Foreign Service Reserve Unlimited] appointment; he considered other specialties outside the courier field. He was in the dark, however, about one crucial matter: no promotional opportunities existed in his personal skill code group because they had been totally removed in 1969. Koorkanian testified . . . that he was never told that the Department had transferred the opportunities to another category and that he as never informed of the need to change his personal skill code in order to compete for promotion. We accept his testimony on these points.

There is no question that when on numerous occasions he asked why he was not being promoted, he received answers that were relevant to the general question of why promotions for diplomatic couriers were slow: problems with "headroom" or "limited attrition" or budgetary constraints. But he never received from any management official the correct answer: that there were no promotion opportunities in the 2440 category after 1969 and that in order to be in the running, he would have to switch his personal skill code to 2421. He was, in short, misinformed and misled as to the true facts.

In light of the facts and circumstances of this case, the Department's failure to inform the grievant of the effects of the reclassification on his promotion potential resulted in the removal of any reasonable opportunity for promotion as contemplated by the provisions of 3 FAM

011. Accordingly, we conclude that with respect to Issue 5, the Department did not meet a responsibility to respond meaningfully to the grievant's questions by advising him of the effect of the reclassification on his promotion potential in the Diplomatic Courier field.

Record of Proceedings before the Foreign Service Grievance Board, No. G–81–041–State–30 (October 28, 1983) at 11–12 (citations omitted).

Despite the explicit findings that the plaintiff had been misled by the Department with respect to promotion opportunities over a period spanning many years, the Board—using a unique procedure—concluded that plaintiff would not have been promoted during the 1969–1980 period anyway and thus that he was entitled to no relief. Instead of reconvening Selection Boards to make this determination, the Board made the decision itself, after comparing plaintiff's personnel skills with those of persons who were promoted. The Board wrote:

Upon comparing the EERs of those promoted in 1977, 1978 and 1979 with grievant's EERs for the same periods, we find the Department's arguments persuasive that grievant would not have been promoted in those years if he had competed with those whose records were examined by this Board. We have not attempted to judge the relative ranking among those who were promoted nor have we attempted to judge how far away from promotability grievant might have been. We have simply determined that the total record of each person promoted was sufficiently superior to the total record of grievant that it is clear grievant would not have received one of the limited numbers of promotions available.

Record of Proceedings before the Foreign Service Grievance Board, No. G–81–041–State–30 (April 30, 1984) at 6.

According to papers filed with the Court by the government, this case is the first time the Department used this procedure to determine the appropriate remedy following a Board finding in a grievant's favor. "The Defendant ... has been unable to find any case before the Foreign Service Grievance Board wherein the Board has reviewed the EER's [sic] of the individuals in the functional competition groups and made an independent assessment that the grievant would not have been selected for promotion." Def. Memorandum to the Court (January 14, 1987). Rather, the Board will typically remedy a wrongful nonpromotion by giving "the grievant the same promotions achieved by members of [his] 'class' with comparable Foreign Service records—*i.e.*, the promotions achieved by fellow officers who entered the Foreign Service with the grievant and performed as well as [he]." *Reiner v. United States*, 686 F.2d 1017, 1026 (D.C.Cir.1982) (Wilkey, J. concurring). *See also, Ehrman v. United States*, No. 82–1984, slip op. at 3 (D.D.C., August 31, 1983).

Additionally, since 1984, selection boards have been reconstituted to review files for promotion purposes.[1] Reconstituted selection boards are a preferred method because they safeguard the purposes which underlie the use of selection boards in the first instance: namely, that an officer be evaluated by his peers in an impartial, bias free setting.[2] Thus, by contrast, the Board members who evaluated and compared the

---

1. In 1984, seven boards were reconstituted in connection with four cases; in 1985, three boards in connection with eight cases; and in 1986, three boards in connection with five cases. Exhibit 1 at 2, Def. Memorandum to the Court (October 23, 1986).

2. Selection boards always include one woman and a representative of a minority group, as well as a public member. Exhibit 1 at 2, Def. Memorandum to the Court (October 23, 1986). Moreover, "[m]embers are given an oath of office before taking up their duties, in which they agree to apply the promotion criteria without prejudice or partiality and to maintain the confidentiality of the board's proceedings. The precepts are specific in calling for decisions to be made 'solely on merit with absolute fairness and justice' and for the board not to 'disadvantage any members, directly or indirectly, for reasons of race, color, religion, sex, marital status, national origin, handicap, or means of entry into the Service.'" *Id.* at 2–3.

plaintiff against promotees for 1977 through 1979, not only utilized an inexact method for determining his injury, but also may not have been as equitably constituted a group of evaluators as a reconstituted selection board would have been.

Given the two usual procedures for remedying nonpromotional errors, as well as the fact that the new option the Board used gave the plaintiff no remedy whatsoever for what all the parties admit was an egregious error, I find that the procedures used by the Board in this case were inadequate. The way to determine what relief is due the plaintiff in this case is to use one of the two remedial procedures which have heretofore been employed, or another procedure that will adequately achieve a fair result. I am therefore remanding the case, so that an appropriate remedy can be fashioned.

Specifically, the Department can reconvene the Selection Boards for the years in question. If this is done, I suggest that the plaintiff be represented by counsel before the Selection Boards so that his case can be fully and adequately presented. As an alternative to this process the Department might more expeditiously and economically conclude this matter by agreeing to the eminently fair disposition offer made by plaintiff's counsel. Plaintiff simply desires that the statistical method approved by the *Reiner* and *Erman* decisions be employed to assess his damages. *See* Memorandum of Points and Authorities in Support of Pl. Motion for Summary Judgment at 20–22 and Exhibits B and C. Using that method to estimate what relief is proper, plaintiff asks that his 1980 promotion be made retroactive to 1977, and that he be given one additional promotion with back pay. *Id.* On remand, the Department may chose either of these alternatives, or another appropriate remedial method.

The decision of the Foreign Service Grievance Board is affirmed as to its findings of fact, Record of Proceedings before the Foreign Service Grievance Board, No. G–81–041–State–30 (October 28, 1983) at

7–12, but vacated as to the denial of relief, Record of Proceedings before the Foreign Service Grievance Board, No. G–81–041–State–30 (April 30, 1984). Accordingly, that portion of the defendant's Motion to Affirm the Decision of the Foreign Service Grievance Board which seeks affirmance of the Board's findings of fact is granted and the rest of defendant's Motion is denied. Plaintiff's Motion for Summary Judgment is granted except with respect to the relief sought. The case is remanded for the determination of a remedy consistent with this opinion. An appropriate order accompanies this memorandum.