John J. HARTER, Appellant,

v.

UNITED STATES of America, et al.

No. 87–5419.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 28, 1989.
Decided April 11, 1989.

Alan Raywid, Washington, D.C., for appellant.

John J. Harter, pro se.

Susan Z. Holik and Joseph B. Kennedy, Washington, D.C., were on the brief, for amicus curiae American Foreign Service Association, Government Accountability Project, and Committee Against Government Waste, urging reversal.

Diane M. Sullivan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before: MIKVA, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant John J. Harter was involuntarily retired from the Foreign Service in 1983 because he failed to gain promotion to the Senior Foreign Service within the time-frame set by regulation under the Foreign Service Act of 1980, as amended, 22 U.S.C. §§ 3901–4226 (1982 & Supp. IV 1986). Harter filed a timely grievance with the Foreign Service Grievance Board

("FSGB"), asserting, *inter alia,* that unfairly critical statements in his personnel file may have contributed to his "passover." Following the Board's initial denial of his grievance, Harter obtained a district court order directing the Board to require the State Department to establish that Harter would not have been promoted even absent the prejudicial remarks. On remand to the Board, the State Department sought to discharge its burden through the use of a Reconstituted Selection Board ("RSB") that compared Harter's file to those of the lowest qualified candidates who were promoted in Harter's 1983 class. The Board accepted the State Department's proffer of the RSB evidence and denied Harter's grievance. The district court affirmed and Harter now appeals. We affirm.

## I.

Appellant filed numerous grievances during his twenty-year Foreign Service career, all of them substantially successful. Of particular relevance to the instant proceeding was a grievance Harter filed in 1980, when he faced mandatory retirement prospects comparable to those he confronted in 1983. *See* 22 U.S.C. § 4007 (1982) (describing "up or out" system of promotion within Foreign Service). The 1980 grievance was settled by Harter in exchange for a three-year extension of time-in-class during which the Department would present Mr. Harter's performance file to all selection boards convened for the purpose of making promotion decisions for officers of his grade. Pursuant to the settlement, Harter was evaluated and ranked each year from 1981 to 1983, but did not fare well. In 1981 he was ranked low in comparison with other economic officers and toward the middle class-wide. In both 1982 and 1983, based on his Employee Evaluation Report ("EER"), Harter was ranked in the middle ranges with respect to both categories of officers.

In 1983, Harter thus failed to make the promotion cut and, once again, was faced with imminent involuntary retirement. Claiming that certain comments in his 1983 EER were unfairly prejudicial, Harter grieved to the FSGB. After a hearing, the Board determined that any claimed deficiencies in the 1983 EER were not a substantial factor in Harter's non-promotion. Harter immediately sought review of the Board's determination in district court pursuant to 22 U.S.C. § 4140.

The district court, in a memorandum opinion, found some of the challenged comments in the 1983 EER to be "troublesome" and agreed with Harter that their presence "could well have been a substantial factor in the Selection Board's review." *Harter v. United States,* No. 85–1086, slip op. at 6–7 (D.D.C. Jan. 31, 1986). The court therefore held that Harter had met "his initial burden," *id.* at 7 (citing *Reiner v. United States,* 686 F.2d 1017, 1021 (D.C. Cir.1982)) and remanded the matter to the FSGB "with instructions to consider whether the Department has met its burden of showing that plaintiff would not have been promoted even in the absence of these critical comments...." *Id.*

On remand, the State Department convened an RSB to replicate the decisionmaking process of the original selection board and produce evidence as to whether Harter would have been promoted in 1983 if his file had been clean. The RSB was asked to compare Harter's redacted file against the files of the lowest-ranking officers on the 1983 list of those promoted. The RSB ultimately ranked Harter below the other officers whose files were before it, and the Department transmitted these results to the FSGB as part of its case on remand. The FSGB credited the RSB results and subsequently held that the Department had met its but-for burden "by a mechanism that resembles as closely as possible the selection boards that are mandated in the Foreign Service Act." This determination was subsequently affirmed by the district court. *Harter,* No. 87–0711, slip op. (D.D.C. Nov. 4, 1987).

## II.

Although Mr. Harter raises a number of challenges to the process that ended in his mandatory retirement, we believe only one

issue—concerning the use of the RSB—merits discussion.[1] We understand Harter to raise two independent objections to the RSB procedure. First, he contends that the Foreign Service Act does not permit the State Department to use—and the FSGB to credit—the results of RSB deliberations in grievance proceedings. In the alternative, Harter alleges that it was arbitrary and capricious for the FSGB to rely on the RSB's conclusions in resolving Harter's particular grievance. Neither objection is substantial, in our judgment.

■ Harter's statutory claim is premised on the absence of mention in statute (or regulation) of the permissibility of an RSB proceeding, but it is this very premise that undermines appellant's position. As Harter has conceded, nothing in the language of the Foreign Service Act or its legislative history is specifically directed to the permissibility or impermissibility of accepting as evidence in a grievance proceeding the conclusions drawn by an RSB. What little the Act does say is unfavorable to appellant: the Act explicitly sanctions the use of "any oral or documentary evidence" in grievance proceedings involving a hearing, subject to a requirement that the Board exclude "any irrelevant, immaterial, or unduly repetitious evidence." 22 U.S.C. § 4136(4) (1982). Without specific congressional intent on the question, see *Chevron USA Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), Harter faces the uphill challenge of demonstrating that the FSGB's determination to credit the RSB results is founded on an impermissible view of the Board's procedural discretion in admitting evidence in grievance proceedings.[2] *See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed. 2d 460 (1978); *FCC v. Schreiber,* 381 U.S. 279, 290–91, 85 S.Ct. 1459, 1467–68, 14 L.Ed.2d 383 (1965); *Cities of Batavia, et al. v. FERC,* 672 F.2d 64, 88 (D.C.Cir.1982).

We do not think Harter has met this analytical burden of demonstrating either that the Board has unreasonably applied its broad procedural authority under the Foreign Service Act or that it is irrational, *per se,* for the Board to permit the introduction of evidence generated through the use of an RSB. As the Board noted in its opinion on remand, in fashioning remedies under the Act, it is not enough merely to determine that the grievant possesses certain objective qualities that make him "promotion material"; "promotion opportunities are seldom sufficient to include all who are recommended" for promotion by a selection board. Instead, it is necessary to inquire as to whether the grievant would have been among those actually promoted in his class, and this requires a comparison of the grievant's file against some portion of the files of promotees. In endorsing the use of an RSB to conduct this comparison, we believe the Board reasonably opted to rely on "a mechanism that resembles as closely as possible the selection boards that are mandated in the Foreign Service Act." After all, section 4002 of the Act *requires* the Secretary of State, with few exceptions, to base Foreign Service promotion decisions *in the first instance* on the recommendations of selection boards. *See* 22 U.S.C. §§ 4001(b) & 4002(a)(1) (1982). What better way, it might be asked, to replicate the conditions of the original selection board environment than to conduct a "paper competition" involving the grievant's file and a representative sample of the files of those candidates on the low end of the promotion list in the grievant's class?

Harter's rejoinder is that selection boards in general, and reconstituted boards in particular, are peculiarly unsuited for

---

1. Harter's other concerns, in our view, are either irrelevant to this appeal or have been addressed adequately in the district court's opinion.

2. Harter correctly notes that the Act requires the Board, on request, to hold a hearing in grievances such as his, *see* 22 U.S.C. § 4136(1)(A) (1982), but this requirement in no way prevents the Board from admitting at such hearings extra-hearing "documentary" evidence of the results of an RSB review. *Id.* § 4136(4).

use in assessing the promotability of Foreign Service officers who have grieved successfully in the past. Harter argues that a candidate with a successful grievance behind him will forever have a blemished employment file (because, for instance, of an unusual amount of time-in-class), and he urges that such candidates are entitled to special treatment to ensure that the State Department's previous mistakes do not continue to prejudice their promotion prospects. It is unclear what sort of "special treatment" Harter envisions, although we gather he urges an independent objective assessment of his overall merit by the Foreign Service Grievance Board. Nevertheless, whatever the specifics of Harter's approach, it would necessarily imply a noncomparative assessment in which Harter's promotion *vel non* would not depend on the quality of those against whom he was competing. There would be no room in Harter's plan for the sort of competitive, ordinal ranking envisaged by the Act for promotion decisions generally. *See* 22 U.S.C. §§ 4002 & 4003 (1982). As such, his approach would seem to give a previously successful grievant a distinct advantage over the other members of his class in gaining promotion to the next level.

Given the role that candidate-to-candidate competition plays in the Foreign Service promotion process, we do not think it was unreasonable for the Board to approve the use of RSB procedures to gauge the promotability of candidates in Harter's position. In crediting the results of reconstituted boards, the FSGB has harmonized the Foreign Service Act's strong preference that promotion decisions be made in a competitive fashion through selection boards composed of the peers of Foreign Service members and its objective of "maintaining a fair and effective system for the resolution of individual grievances...." 22 U.S.C. § 3901(b)(4) (1982).

We do not mean to suggest that the Act prohibits the Board from relying on some sort of independent "expert" assessment of a grievant's promotability in the exercise of its responsibilities. But it surely does not prevent the Board from sanctioning RSB procedures to perform the same function. It was plainly within the Board's discretion to fashion the grievance-resolution process after the statutory promotion procedure.[3]

Appellant argues that *Ehrman v. United States*, No. 82–1984, slip op. (D.D.C. Aug. 31, 1983), a case in which the district court ordered retroactive promotion of a Foreign Service officer due to a cumulation of prejudicial errors, should control this appeal. We disagree. The State Department, as far as we can discern, did not reconstitute a selection board to discharge its burden in *Ehrman;* had it done so, the resulting evidence might have established that the grievant would not have been promoted absent the Department's mistakes. And to the extent *Ehrman* suggests that the selection board procedures erected by the Foreign Service Act are *inherently* incapable of being applied fairly to a Foreign Service officer who may have been awarded additional time-in-class due to mistakes made early in his career, we reject that notion. Indeed, in the instant case, Harter himself (in settling his prior grievances in exchange for additional time-in-class) expressly bargained for the use of a statutory selection board in a closely analogous situation.

■ Bearing in mind the scope of the Board's discretion under the Foreign Service Act, appellant's alternative argument —that it was arbitrary and capricious for the Board to credit the results of the RSB convened to resolve Harter's *particular* grievance—fails as well. Harter complains that the RSB's sample, six in number, was not an "appropriate cross section" of Har-

---

**3.** Harter contends that the State Department's RSB procedures are structurally biased, in that the RSB is "unilaterally created" by the State Department and convened without the grievant's participation. It appears from the record, however, that the procedures used by the State Department in selecting RSB members and conducting deliberations bear a close resemblance to the procedures governing original selection board proceedings. *See* 22 U.S.C. §§ 4002, 4003 (1982). As to the latter contention, moreover, we do not see how the grievant would avoid identification if he were permitted to participate in the RSB proceeding, and this, according to Harter, would defeat the impartiality of the procedure.

ter's 1983 class, but we think this charge goes only to the weight, and not to the "admissibility" of the resulting evidence. In that connection, we do not believe it was irrational for the FSGB to assign significant weight to the conclusion of Harter's RSB, which ranked appellant below both the three lowest-ranked class-wide promotees and the two lowest-ranked officers who were promoted out of Harter's functional classification in 1983. And Harter's allegation that the chairman of his RSB "had an established public record of bias" against him is baseless, having been adequately addressed in the FSGB's opinion on remand. To be sure, we do not rule out the possibility that, in some circumstances, it might be arbitrary for the FSGB to deny a grievance in substantial reliance on the results of a reconstituted selection board proceeding. But we see nothing in the record before us that draws the Board's reliance on such a proceeding into question. The judgment is in all respects

*Affirmed.*