**Willene DANIELS, Plaintiff,**

v.

**Charles Z. WICK, Director, United States Information Agency, et al., Defendants.**

**C.A. No. 83–1437.**

United States District Court, District of Columbia.

Dec. 12, 1985.

See also, D.C.Cir., 812 F.2d 729.

Beth S. Slavet, Washington, D.C., for plaintiff.

Diane M. Sullivan, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

BRYANT, Senior District Judge.

This action is before the court on plaintiff's motion and supplementary motion for summary judgment, and defendants' motion and supplementary motion for affirmance of the decisions of the Foreign Service Grievance Board ("Board") and the Acting Director of the United States Information Agency ("USIA" or the "Agency"). Having considered the papers submitted by both parties, the record of the case, and the oral argument held on these motions on August 20, 1985, the court grants in part and denies in part plaintiff's and defendants' motions.

## BACKGROUND

In February 1978, the defendant USIA appointed the plaintiff as a Foreign Service Limited Reserve Officer. 22 U.S.C. § 922 (1976). The conditions of her appointment time-limited required that the defendant Agency terminate her employment if she were not tenured within five years from the date of appointment. Plaintiff's Statement of Material Facts Not in Dispute, Nos. 1, 2. *See* 22 U.S.C. § 3949 (1982).

Plaintiff's first overseas assignment was to Brazil as a Junior Officer Trainee. At the end of this post she received a promotion. Defendant next assigned plaintiff to Georgetown, Guyana as an Assistant Public Affairs Officer ("APAO"). During the early part of this assignment problems ensued between the plaintiff and her supervisor, the Public Affairs Officer ("PAO"). Because the PAO prevented the plaintiff from carrying out her responsibilities, she was transferred back to Washington, D.C. in April 1981, at least one year before the end of her expected term in Guyana. Prior to her transfer, plaintiff received a negative Officer Evaluation Report ("OER") from the supervising PAO. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment (hereinafter cited as "Plaintiff's Memorandum") at 2.

After returning to Washington, plaintiff filed a formal grievance with the defendant Agency in which she complained that her OER from September 7, 1980 to April 24, 1981 was "totally biased, false and falsely prejudicial;" that she had been subjected to "ineffective, harassing, and hostile treatment" by her supervisor in Guyana causing a premature break in her assignment; that her career consequently suffered a severe setback; and that she had incurred certain expenses relating to her abrupt departure from post and her son's educational expenses. Plaintiff requested as remedies: "(1) removal of the OER; (2) extension of her uncommissioned appointment period by two years, during which she might compete for tenure; (3) promotion to Class FP–3; (4) reimbursement of her out-of-pocket expenses; (5) reimbursement of expenses connected with her son's education; and (6) disciplinary action against her supervisor in Guyana." Decision of the Foreign Service Grievance Board, Record of Proceedings No. G–82–003–ICA–1, at 1–2, Exhibit A of Complaint (hereinafter "Board Decision"). In response, the USIA Labor Relations Office agreed to expunge the negative OER

in its entirety from plaintiff's file, but failed to find the evaluation falsely prejudicial. The Agency also agreed to try to reimburse plaintiff for her son's educational expenses. The Agency denied plaintiff all other relief requested. Notwithstanding the agreement to remove the report, Agency personnel forwarded the "expunged" OER to the Board of Examiners for the Foreign Service ("BEX"), which reviews files for the commissioning and tenuring of candidates. Plaintiff claimed that the Agency's error in forwarding the OER would prevent her from receiving a fair evaluation by the panel because subsequent removal could not cure the initial taint. After the OER was removed from plaintiff's file, the BEX informed her that the limited evaluations contained in her file made it inadvisable to form a qualifications evaluation panel on her behalf at that time. Plaintiff's Memorandum at 11.

In January 1982, plaintiff appealed the Agency's decision to the Foreign Service Grievance Board (the "Board"). In her grievance to the Board, plaintiff reiterated all of her complaints to the Agency regarding the OER, the educational matter, the failure of Agency officials to correct deficiencies in her housing, and interference by her superiors in Guyana with her "ability to grieve." Board Decision at 2. In addition to all of the remedies sought from the Agency, plaintiff also requested that the Board award her payment of attorney's fees and costs, an overseas assignment, and tenure. *Id.* At the time of the Board's consideration of her grievance, plaintiff was untenured and had only six months left of the five-year period in which to gain tenure. In its decision of August 13, 1982, the Board recommended to the defendant Agency that "tenure constitutes the relief necessary to overcome the wrong the grievant has sustained." *Id.* at 5. After reviewing the file, the Board concluded that "[t]he Record in this case leaves no doubt that the Agency's transfer of the grievant from Guyana resulted from untenable working conditions which were not of the grievant's making." *Id.* The Board further found the removal of the OER from the plaintiff's file an insufficient rem-

edy for the career damage sustained by the grievant, stating that "[t]hat remedy does not alter the effect of the abrupt curtailment of her assignment; it causes a gap in her performance record, thereby leaving undocumented a period of service which was crucial at that stage of her career...." *Id.*

On the basis of the record before it, the Board found that other evaluations of plaintiff's work attested to her ability to have completed the Guyana assignment with excellent performance reports "under normal circumstances." The Board recommended that the Agency Director tenure plaintiff as of the date of its August 13, 1982 decision for two reasons. First, the Board found that plaintiff had been prevented from doing her job and thus from having an "opportunity to demonstrate her competence to function at the level of the job's responsibilities;" *id.,*, second, it found that plaintiff was the only untenured member of her 1978 entering class at the time of the Board's deliberations. The Board denied plaintiff's request for promotion and the payment of attorney's fees. *Id.* at 9–11.

■ A review of the entire record supports the Board's finding that the difficulties plaintiff encountered in Guyana, which resulted in her transfer and caused a significant gap in her career, were due to the failure of the PAO to exercise his supervisory role properly and were not the fault of the plaintiff. When Ms. Daniels first arrived in Guyana with her son, she was given substandard housing and was not provided with an emergency generator for use during the frequent blackouts. The PAO appears to have delayed rather than assisted with efforts to improve these conditions. Plaintiff alleges, and the record indicates, that the PAO failed or refused to allow the plaintiff authority commensurate with her responsibilities as an APAO. The PAO required, for example, that she seek his approval before making overseas telephone calls. In addition, the PAO openly expressed his lack of confidence in the plaintiff to her subordinates and ordered them to report directly to him, thus bypass-

ing their superior, the APAO. Contrary to the PAO's negative OER, evaluations and reports of the plaintiff's conduct and performance in Guyana from other officials of the Agency, her subordinates, journalists, visitors, and officials of the Guyana government indicate that she engendered considerable respect and affection during her brief stay. The record suggests that the plaintiff demonstrated her ability to perform the duties of her office extremely well. Under the supervision of a PAO capable of dealing properly with a subordinate officer, plaintiff would have received an excellent rating. For the reasons stated below, this court agrees with the Board's recommendation of tenure and remands on the questions of promotion and attorney's fees.

In a letter dated September 13, 1982, the Acting Director of USIA informed plaintiff that section 306 of the Foreign Service Act of 1980, Pub.L. 96–465; October 17, 1980; 94 Stat. 2086, 22 U.S.C. § 3946, limited his authority to make career appointments to those based on recommendations of boards which have evaluated the fitness and aptitude of the career candidate. Consequently, the Acting Director refused to implement the tenure recommendation of the Grievance Board; instead, he offered to petition the Board to extend the period of plaintiff's limited extension appointment. Letter of Gilbert A. Robinson, Exhibit B of Complaint. In response to a joint petition from the parties, the Board granted the extension while preserving the plaintiff's right to seek judicial redress regarding its recommendation. Subsequently, plaintiff appealed to this court seeking a declaratory judgment and a writ of mandamus to reverse the decision of the USIA Acting Director and affirm in part and reverse in part the decision of the Board.

## JURISDICTION

Jurisdiction over this action lies pursuant to 22 U.S.C. § 4140 (1982), which permits a party to seek judicial review of a final action of the Secretary or the Board on any grievance in accordance with the standards of Title 5 of the Administrative Procedure Act. 5 U.S.C. §§ 701 et seq. (1982). Chal-

lenges to agency action are governed by section 706(2)(A), which allows a court to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982).

## DISCUSSION

(a) *The Acting Director's Refusal to Implement the Decision of the Grievance Board.* The Board recommended to the Agency Director that the plaintiff be tenured. The Agency rejected this recommendation. Plaintiff contends that the Board's decision to recommend, rather than order, the Agency to act was not in accordance with law. Instead, plaintiff argues that the statute on its face, sections 1107(b) and 1101, and the Agency's implied powers provide the Board authority to order tenure. *See Health System of Oklahoma, Inc. v. Norman,* 589 F.2d 486, 490 and n. 6 (10th Cir.1978); Plaintiff's Memorandum at 7–9. Defendant claims that it lacks authority to implement the Board's recommendation because only career member panels can recommend tenure. Defendants' Memorandum at 10.

Under Chapter 11 of the Foreign Service Act of 1980, a Grievance Board has jurisdiction to hear certain claims defined as grievances. 22 U.S.C. § 4131(a)(1). Some matters, including judgments of a tenure board established under section 3946(b) of Title 22, are excluded from the definition of a "grievance" and cannot be reviewed. All of the claims the plaintiff challenged in her grievance were proper grievances under section 1101(a)(1) and within the jurisdiction of the Board. The plaintiff did not challenge the judgment of a tenure board, which the Board statutorily cannot review. 22 U.S.C. § 4131(b)(2). In fact, the tenure board neither approved nor rejected plaintiff's application, but merely concluded that it lacked sufficient information to review it at that time.

To remedy the wrongs over which it had proper authority, the Grievance Board concluded that plaintiff should be granted tenure. The Agency rejected the Board's recommendation and plaintiff appealed. What is at issue here is not whether the Board

may review tenure judgments—it cannot and did not—rather, the crux of this matter is whether the Board has remedial authority to recommend or order tenure and whether the Agency can implement a Board tenure recommendation.

■ (1) *Authority to Order Tenure* —Two statutory provisions arguably permit the Board to order tenure under exceptional circumstances. Section 1107(b)(3) grants the Board authority to direct the Department "to retain in the Service a member whose separation would be in consequence of the matter by which the member is aggrieved." 22 U.S.C. § 4137(b)(3) (1982). A literal reading of this provision implies that the Board has authority to order the Department to keep someone in the service if the wrongs that have occurred otherwise would force the individual to leave. Plaintiff's case exemplifies this situation. The Board concluded that plaintiff had suffered wrongs, not of her own making, that did significant damage to her career. Plaintiff was on a limited five-year appointment in the service with only six months remaining at the time the Board reviewed her case. According to the Board, the violations that had occurred jeopardized plaintiff's opportunity to secure tenure within a five-year period. The matters aggrieved would have caused plaintiff's separation from the service; therefore, the Board had authority to order that she be "retained" in the service pursuant to section 1107(b)(3). Arguably, a member can be "retained" in the service either by extending an appointment, which is prohibited by section 309, 22 U.S.C. § 3949 (1982), or by granting tenure. The Agency concedes that appointments can be extended despite the prohibition of section 309.[1] This court concludes that a fair reading of the statute does not exclude tenure necessarily as a means of retaining a member in the service.

In addition, section 1107(b)(6) allows the Board to order other remedial action under procedures agreed to by the Department and the exclusive representative. If the Agency and exclusive representative agree that tenure is a proper remedy, the Board ostensibly could order tenure pursuant to section 1107(b)(6). 22 U.S.C. § 4137(b)(6) (1982). Counsel for the USIA concurred with this conclusion. In a December 14, 1982 memorandum to the Deputy Director of the USIA, a member of the Agency's general counsel office stated that he agreed that the director lacked authority to grant tenure unilaterally; nonetheless, he concluded that section 1107(b)(6) would permit the Agency head, together with the exclusive bargaining unit, to recommend properly that the Board grant tenure. Exhibit B of Complaint.

■ Thus, the language of both section 1107 provisions suggests that the Board arguably has authority to direct the Department to tenure a member. Despite the possibility that the Board may order tenure, however, judicial deference to the Board's interpretation of its own regulation as recommending rather than ordering tenure is appropriate in this instance. *See FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981) (task for the court is determining whether the agency's construction of a statute is "sufficiently reasonable" to be accepted by a reviewing court); *EPA v. National Crushed Stone Association*, 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980); *see also National Wildlife Federation v. Gorsuch*, 693 F.2d 156, 166–67 (D.C.Cir.1982).

■ (2) *Authority to Recommend Tenure*—The Board made its recommendation of tenure pursuant to its authority to recommend an action to the Secretary under section 1107(d). 22 U.S.C. § 4137(d) (1982). Section 1107(d) provides that the Board may make an appropriate recommendation to the Secretary if it finds that a grievance is meritorious and that remedial action should be taken "that relates directly to promotion or assignment of the grievant or to other remedial action not otherwise provided for in this section." 22 U.S.C. § 4137(d) (1982). In a recent opinion explicating its authority to recommend tenure,

---

1. *See* discussion of section 309, *infra* at 35.

the Grievance Board concluded that a "fair reading of Section 1107(d) is that the Board can recommend that the Secretary take *any* action within the scope of the Secretary's authority. . . ." *In the Matter Between Victor J. Bonilla and Department of State,* R.O.P. No. G–83–025–State–16 at 6 (decided February 15, 1984). The Board concluded that tenure is such an action. The Board in *Bonilla* acknowledged, however, that it rarely recommends tenure because it is a "potent remedy" committing the Agency to lifetime employment for the member. *Id.* at 3. This court concurs with the Board's reasoning in the *Bonilla* matter and supports the notion that a recommendation of tenure is an extraordinary measure reserved for extreme cases such as that presented by the plaintiff.

Section 1107(d) grants the Board broad remedial authority and neither it nor any other provision prohibits the Board from recommending tenure. The Department acknowledged the Board's authority to recommend tenure in an earlier grievance proceeding. In *Ehrman v. United States,* R.O.P. No. 6–81–005–State–4 (decided July 20, 1981), *appealed on other grounds,* C.A. No. 82–1984 (D.D.C. August 31, 1983), slip op., *vacated and remanded as compromised and settled,* C.A. No. 83–2169 (D.C. Cir. March 29, 1984), the Board recommended that Ehrman, a foreign service officer, be granted tenure and the Secretary of State accepted the recommendation and granted tenure retroactive to the Board's decision.

The Board in *Bonilla* concluded that the legislative history of the 1980 Act supports its authority to recommend tenure. *Bonilla* R.O.P. No. G–83–025–State–16 at 6. A discussion of section 306(b), 22 U.S.C. § 3946(b) in the legislative history of the Foreign Service Act of 1980 notes

> that this procedure of evaluation by one's peers has produced perhaps the best kind of selection and promotion sys-

tem which can be legislatively devised. *Together with the safeguards of the grievance procedures established in chapter 11,* this procedure helps to insure that individuals will not be tenured or fired on the whim of a single individual.

H.R.Rep. No. 96–992, 96th Congress, 2d Sess. 1, Committee on Foreign Affairs, at 32 (1980) (emphasis added).[2] This passage indicates that the Committee assumed that the Board would "safeguard" that tenure decisions not be made arbitrarily. Given that the Board is prohibited from reviewing tenure judgments pursuant to section 1101(b)(2), 22 U.S.C. § 4131(b)(2), it only can perform its protective role if it has the power to recommend tenure in some circumstances. *Bonilla,* R.O.P. No. G–83–025–State–16.

Moreover, a discussion of the new career appointments section during hearings before the House Committee on Foreign Affairs in July 1979, establishes the purpose of section 306 as helping to professionalize the Foreign Service and prevent tenure from being granted too casually. *See* House Hearings at 165–66. During these same hearings it was noted that tenure is a board process in the same way that "upward mobility" is a board process. *Id.* Given that promotions are made by the Grievance Board as well as by a selection board, this statement supports the idea that tenure recommendations are not within the exclusive control of the tenure board. Although the statute does not state that the Grievance Board can recommend tenure as well as promotions, this authority is consistent with the purpose of section 306 to make tenure a less casual and more professional concern.

Finally, the Board in *Bonilla* concluded that denying it authority to recommend tenure would be a "significant contraction of its authority, one that would be inconsistent with the philosphy underlying the

---

2. A report by the Committee on Post Office and Civil Service also discusses section 306(b) and notes that "[t]he committee believes that past practice has indicated that this procedure of evaluation by one's peers has been effective. Together with the safeguards of the grievance

procedures established in Chapter 11, this procedure helps to ensure that appointment decisions will not be arbitrary." H.R.Rep. No. 96–992, 96th Congress, 2d Sess. 2, Committee on Post Office and Civil Service, at 53 (1980).

1980 Act." *Bonilla,* R.O.P. No. G–83–0250–State–16 at 8–9. In hearings before the House, Mr. James H. Michel, Deputy Legal Adviser of the Department of State, explained the State Department's draft of the grievance procedures as:

> essentially a codification of the existing part J of the 1946 act. We have tried to reorganize it and simplify it a bit and preserve the substance of it. This is one of the areas where we have gone through the language very carefully with the exclusive representative to be sure that we were not changing anything in any substantive way that would have an adverse impact on an individual. House Hearings at 587.

■ The Board in *Bonilla* states that prior to the 1980 Act it had and exercised powers to recommend promotions into a threshold level that was similar to tenure and to order that a member with a limited appointment be converted to unlimited tenure status. In addition, in the *Ehrman* case the Board recommended tenure and the Secretary of State implemented its recommendation. On the basis of the legislative history the Board concluded that

> In sum, although prior to 1980 the Act did not provide for "career" appointments as such, the FSGB assumed and exercised the power, in appropriate cases, to recommend or order personnel actions which had the effect of securing for successful grievants a form of tenure. This history was, of course, well-known to the parties when the 1980 Act was being drafted. The parties expressed no dissatisfaction to Congress with the Board's action in these regards, and because of the parties' acquiescence Congress left the grievance provisions undisturbed.... The fair inference is that the parties and Congress assumed that the FSGB would continue to play the type of role it had played in the past in analogous circumstances. When coupled with the express legislative history referring to the FSGB's role in preventing "arbitrary" tenure decisions ... the legislative history suggests that Congress intended the Board to be free to

> recommend tenure in appropriate circumstances.

*Bonilla,* R.O.P. No. G–83–025–State–16 at 12. Finding no indication in the legislative history that Congress intended to exclude tenure recommendations from the powers of the Board, and every indication that Congress intended not to restrict powers previously held by the Board, this court concludes that the Board has authority to recommend tenure.

Policy considerations also support the Board's authority to recommend tenure. *See Bonilla,* R.O.P. No. G–83–025–State–16 at 12–13. Congress established the Foreign Service Grievance Board to ensure that members are treated fairly and provided with due process protection. *See* H.R. Rep. No. 96–992, 96th Congress, 2d Sess. 2, Committee on Post Office and Civil Service, at 32 (1980). A member may be the victim of wrongful conduct that seriously jeopardizes the person's opportunity to achieve tenure. In such a situation, the only fair remedy may be a recommendation of tenure by the Board. If the Grievance Board lacked authority to recommend tenure, members could be denied unfairly that which is most important to their careers: permanent employment. Excluding tenure recommendations from the ambit of the Board's remedial authority is inconsistent therefore with the Congressional concern to guarantee fair treatment. Thus, this court concludes that section 1107(d) grants the Foreign Service Grievance Board authority to recommend tenure as a remedial action.

(3) *Agency Authority to Implement a Grievance Board Recommendation of Tenure*—A Board recommendation is meaningless if the Agency lacks authority to implement it. The Secretary may veto Board recommendations pursuant to section 1107(d) in certain limited circumstances, namely if implementation would be "contrary to law or would adversely affect the foreign policy or national security of the United States." 22 U.S.C. § 4137(d) (1982). Congress intended that Board recommendations be implemented in most instances. In a discussion of the grievance section of the Foreign Service Act of 1980

on the floor of Congress, it was noted that Congress intended to convey to agency heads that the decisions of the Board must be implemented except in rare cases. 126 Cong. Rec. Part 22, 96th Cong., 2d Sess. at 28660.

After examining the record of proceedings of plaintiff's grievance and the Board's decision and recommendation, the Acting Director of USIA concluded in a written statement to the plaintiff that he lacked lawful authority to implement the Board's recommendation. He based his conclusion on section 306 of the Foreign Service Act of 1980, 22 U.S.C. § 3946 (1982). According to the Acting Director, section 306 limits his authority to make appointments to those based upon the recommendations of career member evaluation boards. Because a Grievance Board does not constitute such a career panel, the Agency has concluded that it cannot implement a Board tenure recommendation. Having reviewed the legislative history of section 306 and the policy considerations underlying the authority of grievance boards, this court concludes that the Agency's interpretation of section 306 is too narrow.

Section 306(b) provides in relevant part that:

Decisions by the Secretary [to make career appointments] ... shall be based upon the recommendations of boards, established by the Secretary and composed entirely or primarily of career members of the Service, which shall evaluate the fitness and aptitude of career candidates for the work of the Service. [22 U.S.C. § 3946(b) (1982)].

■ The legislative history of section 306(b) establishes that Congress viewed the tenure peer review procedures as necessary to limit the authority of the Secretary to act unilaterally in granting tenure. *See* discussion at p. 33, *supra*. Prohibiting an agency head from acting unilaterally, however, does not limit the authority of the Secretary to grant tenure if acting under the recommendation of the Board, an independent adjudicatory body. Although tenure recommendations by one's peers is a preferable system in the vast majority of cases, there are exceptional cases in which a prior taint may not be cured other than by a recommendation of tenure by authorities outside the peer group. Indeed, comments from the legislative history specifically state that section 306 should be read *together with* the safeguards of the grievance procedures to insure that individuals are not arbitrarily tenured or fired by a single person. *See* H.R.Rep. No. 96–992, 96th Congress, 2d Sess. 1, Committee on Foreign Affairs, at 32 (1980). These comments imply Congressional intent to permit the Board authority to include tenuring within its powers of remedial action. Logically, if Congress intended to give the Board authority to recommend tenure, it assumed that the Secretary could implement the recommendation. Without such authority, a recommendation is ineffectual. Having concluded that the Grievance Board properly may recommend tenure, *see* discussion at pp. 32–34, *supra*, this court further concludes that the Secretary has authority to implement these recommendations. Thus, individuals are protected from arbitrary tenuring decisions through two means: recommendations made by career member panels which are non-reviewable, and remedial action taken by the Grievance Board.

■ Finally, the Agency's broad interpretation of section 309 of the Foreign Service Act of 1980, 22 U.S.C. § 3949, lends support, by analogy, to this court's interpretation of section 306. Section 309 provides that limited appointments may not exceed five years in duration, and except for circumstances not relevant here, "may not be extended or renewed." 22 U.S.C. § 3949 (1982). Despite this explicit language prohibiting extensions, Acting Director Robinson suggested in a letter to the plaintiff that he could petition the Grievance Board to extend her appointment beyond the five year period pursuant to the Board's authority to retain members in the Service in accordance with section 1107(b)(3). The Board granted this request and the plaintiff received an extension permitting her to complete a three-year tour of

duty in Bombay, India. Notwithstanding the prohibitory language of section 309, therefore, the Agency interpreted the Board's remedial powers as including grants of extensions beyond the limited five-year period. This court not only agrees with the Agency's interpretation of section 309, but also concludes by analogy, and for the reasons stated above, that the Board can recommend tenure in exceptional cases and the Secretary can implement such recommendations despite the language of section 306 indicating that recommendations are made solely by career member panels.

■■■■ (4) *The Standard*—The scope of review for agency action under the "arbitrary and capricious" standard is narrow. A reviewing court must determine whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment...." *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823; *see Bowman Transp. v. Ark.-Best Freight System*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). As noted above section 306(b), 22 U.S.C. § 3946(b) does not prohibit implementation of a tenure recommendation by the Grievance Board. The Acting Director of the USIA incorrectly concluded that granting the Board's recommendation of tenure would be contrary to law. Furthermore, his interpretation of his statutory authority in this case is at variance with the State Department's actions in *Ehrman*, where the Department acknowledged the Board's authority to recommend tenure. Varying interpretations of statutory authority from case to case is a hallmark of arbitrary and capricious conduct. Use of the veto power against implementation of the Board's recommendation of tenure in this case consequently was not in accordance with law and the recommendation should have been implemented. 5 U.S.C. § 706(2)(A) (1982).

■■■■ If an agency action is invalid or not in accordance with law and must be set aside, the preferred course for a reviewing court is to remand to the agency to allow it to remedy its original action. *New Eng-*

*land Coalition on Nuclear Poll. v. N.R.C.*, 727 F.2d 1127 (D.C.Cir.1984); *Williams v. Washington Metropolitan Area Transit Commission*, 415 F.2d 922, 939–40 (D.C. Cir.1968) (en banc), *cert. denied*, 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969). Only in unusual circumstances, not warranted here, should a court make a determination on behalf of an agency. *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823 (court should not substitute its judgment for that of the agency); *Henderson v. United States*, 580 F.Supp. 1010, 1014 (D.D.C.1983). This matter is remanded, therefore, to the Acting Director of the USIA for implementation of the Board's recommendation in view of the fact that the recommendation is not contrary to law and would not affect adversely the foreign policy or national security of the United States.

(b) *Attorney's Fees.* The Grievance Board, in its August 13, 1982 decision, also denied the plaintiff an award of attorney's fees. The Board recognized its authority to pay reasonable attorney fees under section 1107(b)(5) of the Foreign Service Act of 1980, 22 U.S.C. 4137(b)(5) (1982), in accordance with the standards required by the Merit Systems Protection Board ("MSPB") under section 7701(g) of Title 5, but concluded that such an award was not warranted in the "interest of justice." Board Decision at 9–10.

Plaintiff argues that the Board ruled in an untimely manner by issuing its decision on attorney's fees in conjunction with its decision on the merits. Instead, plaintiff contends that the ruling on attorney's fees should be made subsequent to the decision on the merits to enable the prevailing party to make an intelligent argument in support of its request for fees. *See* Plaintiff's Memorandum at 22; *see also Ehrman*, C.A. No. 82–1984 at 9. Plaintiff also claims that the Board failed to apply the "interest of justice" standard fully and therefore applied it improperly. Plaintiff's Memorandum at 23.

■■■■ An award of attorney's fees is a matter of discretion left to the Board considering the request under section 7701(g)

and is not appropriate in every case in which a grievant prevails. *See e.g., Sterner v. Department of Army*, 711 F.2d 1563, 1568 (Fed.Cir.1983); *accord, Bennett v. Department of Navy*, 699 F.2d 1140, 1146 (Fed.Cir.1983). Section 7701(g) of Title 5 specifically states that "the Board ... *may* require payment by the agency involved of reasonable attorney fees incurred...." 5 U.S.C. § 7701(g)(1) (1982) (emphasis added). Moreover, the various criteria developed by the MSPB in its case law, *see Allen v. U.S. Postal Service*, 2 MSPB 582, 2 M.S.P.R. 420 (1980) is merely illustrative of the "interest of justice" standard, and does not constitute an exclusive or mandatory list of factors to be considered.[3] Consequently, the Board did not act improperly by applying some but not all of the factors typically considered under the "interest of justice" standard, and the Board did not abuse its discretion or act not in accordance with law by concluding that an award of attorney's fees was not warranted in this case.

■ Nevertheless, in accordance with MSPB regulations, which the Board follows pursuant to 22 U.S.C. § 4137(b)(5) (1982), a request for attorney's fees is to be made within ten days after a decision on the merits becomes final and a ruling on such motion is made as an addendum to the final decision. 5 C.F.R. 1201.37(a)(2). In this case, the Board's decision on attorney's fees was made concomitant to its decision on the merits. By making these decisions simultaneously the Board deprived plaintiff, the prevailing party, of an opportunity to review the Board's decision and then make an intelligent argument requesting an award based on that decision. A party cannot be expected to argue for attorney's fees before it knows whether it has prevailed and on what basis. *Accord, Ehrman*, C.A. No. 82-1984, slip op. at 9 and n. 9.

The matter of an attorney's fees award is remanded to the Board for reconsideration consistent with this opinion.

(c) *The Promotion.* In a supplementary motion, the plaintiff also requests that this court vacate the Board's decision to deny her a promotion and order that the defendant grant plaintiff a retroactive promotion. Plaintiff claims that the Board erred in denying her a promotion by failing to make findings of fact and conclusions of law as required by law, *see* 22 U.S.C. § 4137(a) (1982); 22 C.F.R. § 908.1; 3 F.A.M. (Foreign Affairs Manual) § 666.5a, and by applying an improper standard in determining this question.

In its August 13th decision, the Board stated simply that plaintiff "has not furnished any explanation as to why she considers herself entitled to promotion, and we find no proper basis in the Record for recommending her promotion." Board Decision at 9. Contrary to the Board's conclusion, plaintiff claims that the evidence before the Board provided a *prima facie* basis for the plaintiff's promotion. Memorandum of Points and Authorities in Support of Plaintiff's Supplementary Motion for Summary Judgment at 4 (hereinafter cited as Plaintiff's Supplementary Memoran-

---

**3.** In *Allen*, 2 MSPB 582, 2 M.S.P.R. 420 (1980), the MSPB cited some of the following as examples of circumstances that may warrant an award of attorney's fees in the interest of justice:

1. Where the agency engaged in a "prohibited personnel practice" (§ 7701(g)(1));
2. Where the agency's action was "clearly without merit," (§ 7701(g)(1), or was "wholly unfounded," or the employee is "substantially innocent" of the charges brought by the agency;
3. Where the agency initiated the action against the employee in "bad faith," including:
 a. Where the agency's action was brought to "harass" the employee;
 b. Where the agency's action was brought to "exert improper pressure on the employee to act in certain ways";
4. Where the agency committed a "gross procedural error" which "prolonged the proceeding" or "severely prejudiced" the employee;
5. Where the agency "knew or should have known that it would not prevail on the merits" when it brought the proceeding. *Id.* at 593, 2 M.S.P.R. 420 (footnotes omitted).

The MSPB emphasized in *Allen* that the foregoing list is not meant to be a "catalogue of litmus paper tests for award or denial of attorney fees," *id.*, but should serve only as an approximate guide toward establishing the "interest of justice." *Id.*

dum). Plaintiff also relies on the court's reasoning in *Ehrman* to conclude that the Agency's error was a "substantial factor" in her failure to be promoted because the same Agency errors responsible for plaintiff's lack of tenure also were responsible for her lack of promotion. *Id.* at 4–5. In *Ehrman*, the court concluded that "[t]he nub of the Board's error was its failure to see that if plaintiff made out a case entitling him to tenure, his proof also entitled him to a promotion." *Ehrman*, C.A. No. 82–1984, slip op. at 5.

In response, defendants submit that the court in *Ehrman* is incorrect in fact and law. Supplemental Memorandum of Points and Authorities and Note of Argument in Support of Defendants' Supplemental Motion for Affirmance, and in Opposition to Plaintiff's Supplementary Motion for Summary Judgment at 5 (hereinafter cited as Defendants' Supplemental Memorandum). Defendants argue that here the Board's decision amounted to a finding that the plaintiff failed to sustain her burden of proof. *Id.* at 4. Furthermore, defendants note that decisions to promote or award tenure are substantially different. While promotions are made on a comparative basis by ranking officers according to their actual performance in comparison with others, tenure is awarded on the basis of individual fitness and aptitude. *Id.* at 6. Defendants therefore note that no one is "entitled" to a promotion; even after one is comparatively ranked, promotions depend on the number of available vacancies. Although this court agrees with the defendants' contention that decisions regarding promotion and tenure differ substantially, it disagrees with the claim that the Board's denial of a promotion was tantamount to a finding that plaintiff did not meet her burden of proof.

 The Board's conclusory statement denying the plaintiff a promotion because of the plaintiff's alleged failure to explain why she is entitled to such relief is flawed in two respects. First, it contravenes 3 F.A.M. § 666.5a, which requires the Board to include findings of fact and the reasons for its decision. *See Henderson*, 580

F.Supp. at 1014. Second, if the Board did not apply the proper standard of proof to this issue its action is not in accordance with law. 5 U.S.C. § 706(2)(A) (1982). Promotion decisions ordinarily involve two burdens of proof. Here the Board failed to explain whether the plaintiff had met the initial burden of showing that the Agency's action "was a substantial factor in her failure to be promoted." *Reiner v. United States*, 686 F.2d 1017, 1021 (C.A.D.C.1982) (quoting *Reiner v. United States*, C.A. No. 78–0616 (D.D.C.1979), slip op. at 7). If the plaintiff had made such a showing, the burden should have shifted to the Agency to establish "by a preponderance of the evidence that, even in the absence of the ... error, plaintiff would not have been promoted." *Id.*

It is unclear from the Board's conclusory statement whether it applied the appropriate standards of proof to the issue of promotion in accordance with law, 5 U.S.C. § 706(2)(A), and plaintiff failed to meet her burden, or whether the Board failed to apply the proper standards. If the Board concluded that plaintiff failed to meet her burden, then the burden did not shift to the defendant, and the Board properly denied plaintiff a promotion. Regardless whether the Board acted properly in this instance, its failure to include findings of fact and reasons for its decision to deny the promotion violates 3 F.A.M. § 666.5a, 22 C.F.R. 908.1, and 22 U.S.C. 4137(a).

Plaintiff requests that this court grant her relief by ordering that the defendant promote her retroactively to May 26, 1982. Rather than substitute our judgment for that of the Board, or second guess whether the Board applied the proper standards, the more appropriate remedy is to remand to allow the Board an opportunity to remedy its initial decision consistent with this opinion and in accordance with 3 F.A.M. § 666.5a and the *Reiner* standards. *See Henderson*, 580 F.Supp. at 1014.

An appropriate order shall issue.

## ORDER

Upon consideration of the papers submitted by both parties, the entire record

herein, and for the reasons stated in the accompanying memorandum, it is hereby

ORDERED that plaintiff's motion for summary judgment is granted in part; and further

ORDERED that this case be remanded to the defendant Acting Director of the United States Information Agency in order that he shall implement the Foreign Service Grievance Board's August 13, 1982 recommendation to grant the plaintiff tenure; and further

ORDERED that this case be remanded to the defendant in order that he shall allow the Foreign Service Grievance Board to resolve the questions of attorney's fees and promotion, in a manner consistent with this opinion.