Victor J. BONILLA, Plaintiff,

v.

UNITED STATES, et. al., Defendants.

Civ. A. No. 85–2421.

United States District Court,
District of Columbia.

Feb. 11, 1987.

Bridget R. Mugane, Washington, D.C., for plaintiff.

Diane M. Sullivan, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

SPORKIN, District Judge.

Plaintiff Victor J. Bonilla was an untenured foreign service officer from June 14, 1973, until November 14, 1984. His foreign service career was unfortunately marred by a number of adverse personnel actions. Plaintiff contested these decisions through the grievance process and was generally vindicated by the Foreign Service Grievance Board ("the Grievance Board" or "the Board") with respect to each of the grievances; nonetheless, plaintiff did not receive the relief he sought and now appeals the decisions below.

The case is before me on dispositive cross motions. While the matter raises a number of issues, the key question is whether plaintiff is entitled to a tenured position in the foreign service. It is my conclusion that he is so entitled.

## I. FACTS

Plaintiff, holding a B.A. degree in Political Science and an M.A. degree in International Relations, entered the foreign service in 1973, as a Foreign Service Reserve Affirmative Action Entrant, Class 7. Plaintiff's appointment was for five years, with the provision that unless he obtained tenure during that period, he would be separated from the Service. A tenured appointment permits a foreign service officer, like plaintiff, to remain in the Service for his entire career (22 years) in the absence of a finding of substandard performance or misconduct. Foreign service officers, both tenured and untenured, receive periodic performance evaluations and reviews.[1]

Plaintiff's troubles began in 1975 when he was terminated because of certain criticisms contained in a periodic evaluation report. His termination was ordered over the protest of the rating official. Plaintiff brought a grievance which was resolved in his favor when the State Department ("the Department") entered into a Settlement Stipulation, dated August 9, 1976, and reinstated him to the Foreign Service. The Department also ordered that certain adverse information concerning plaintiff be deleted from his file and that he be given

---

1. Tenured members are reviewed annually by selection boards for promotions upward in class. Nontenured members are evaluated on their assignments, with these evaluations placed in their performance files. The performance files are then relied on by Commissioning and Tenure Boards ("Tenure Boards" or "C & T Boards"), which recommend tenure, as well as by the selection boards, which recommend promotion.

an assignment which would "afford him an opportunity to use and develop his skills and to demonstrate and develop his potential." Record of Proceedings No. G–83–025–State–16, Vol. I ("ROP I") at 323.

Although plaintiff received a promotion in 1978, he still had not been tenured by 1980 when his reserve appointment was about to expire. Accordingly, plaintiff pursued a secondary route to tenure by taking a "lateral entry exam." [2] Despite the fact that he passed both the written and oral examinations, Personnel's Board of Examiners ("BEX") denied him lateral entry in September, 1980. Subsequently it was learned that in evaluating plaintiff, the examining authority inappropriately had taken into account information obtained in the 1975 proceeding that had been ordered deleted from plaintiff's personnel file. To correct this error, plaintiff was given an extension of his employment to permit him to "demonstrate his capabilities for long term service." ROP I at 232.[3]

In September 1981, plaintiff took the lateral entry examination again and was again recommended for lateral entry by the oral panel. Nonetheless, the full Board of Examiners once more rejected his lateral entry. Plaintiff complained to the Department in 1982, and again he received an unsatisfactory response. Finally, in the late summer of 1982, shortly before his time in the Service was to expire, plaintiff submitted his case to the Grievance Board. At the time he appeared before the Grievance Board, plaintiff was still not tenured, even though he had been recommended for tenure in 1978, 1979, 1982, and 1983. Indeed, all of plaintiff's classmates that entered the foreign service at the time he entered it, had been tenured by 1978.

The Board took jurisdiction of all issues "grieved" by plaintiff and as an interim measure, suspended plaintiff's termination from the Service which resulted from his inability to obtain tenure within the allotted time. After a six day hearing in the summer of 1983, the Grievance Board decided for the plaintiff on virtually every issue. ROP I at 196–243.

The Board found that in considering the plaintiff's second attempt at lateral entry in 1981, the examining authority had once again inappropriately taken into account the 1975 proceeding. Among other problems with the second examination, the Board noted that "Five of the nine Board [of Examiner] members who participated in the flawed 1980 BEX process served on the 1981 Board." ROP I at 229. The Grievance Board concluded that "the 1981 process ... was so critically flawed as to render its outcome invalid." *Id.* at 230. The Grievance Board also delineated numerous other harms done to the plaintiff's career, such as falsely prejudicial reports and purposefully poor assignments.

In addressing the proper remedy for all of these harms, the Board, in a section entitled "Cumulative Effect," wrote:

We have concluded on the basis of all the facts and the circumstances in the record of this case that a number of serious irregularities, deficiencies and violations of Department regulations critically affected the grievant's career from 1976 to 1982. We have not overlooked shortcomings in the performance of this junior officer. However, the grave chain of damage to his career caused by a pattern of short and generally unsuitable assignments, defective evaluation material, flawed BEX examinations and the prejudicial way in which directed extensions of time in Service were interpreted requires substantial remedies.

---

**2.** Plaintiff was a "Foreign Service Staff Officer." Had he been tenured under the Foreign Service Act of 1980, he would have had a *career* appointment as a "Foreign Service Officer." Lateral entry, on the other hand, allows the Foreign Service Staff Officer to convert to a "probationary career-candidate Foreign Service Officer," and gives the Officer an additional five-

year period in which to achieve tenure. Motion to Affirm at 8, fn. 3.

**3.** There is some confusion concerning the length of the extension granted. It apparently was supposed to be for two years, but Personnel informed plaintiff it was only for one year. Nonetheless, in 1981, the Department affirmed an extension of up to two years.

When reviewed in the context of their effect at critical points in the grievant's career, the Department's errors and failures compel a conclusion that his further attempts to gain tenure would be doomed to failure. Therefore, we do not believe that an extension of his time in Service for that purpose provides an adequate remedy. Nor is the correction now of his personnel files sufficient redress.

In our opinion, a recommendation for tenure is an appropriate remedy where, as here, it is abundantly clear that errors of commission or omission prevented a grievant from achieving tenure.

ROP I at 239–240.

In accord with these conclusions, the Grievance Board recommended that the Secretary of State ("the Secretary") give plaintiff tenure retroactive to 1981, when he was denied lateral entry to the Foreign Service. Additionally, the Board ordered the withdrawal of several adverse evaluations and expungement of certain other records in plaintiff's personnel files. Finally, the Grievance Board ordered that the plaintiff not be terminated for a period of three years.[4]

On September 30, 1983, the Board's tenure recommendation was rejected by the Acting Secretary of State on the basis that he was without the proper authority to grant tenure since the recommendation had not originated with a properly constituted Commissioning and Tenure Board. ROP I, 187–191, at 189. The Acting Secretary also rejected the Grievance Board's conclusion that it possessed the authority to recommend tenure. ROP I at 190. The Acting Secretary concluded that the Grievance Board's recommendation was contrary to law for a third reason: that is, because it interfered with his authority under Section 611 of the Foreign Service Act to terminate limited appointment members of the Foreign Service "at any time." ROP I, at 188–189.

Plaintiff then went back to the Board seeking a modification of the relief it granted in light of the Acting Secretary's denial of tenure. Standing firm in the face of the Acting Secretary's denial of tenure, the Grievance Board, on February 15, 1984, reaffirmed its earlier ruling. ROP I at 119–139. In a carefully reasoned opinion, the Board again found that it had the authority to recommend tenure and did so in this case because of the clear equities in the plaintiff's favor.

The Secretary of State himself then—on March 22, 1984—denied plaintiff tenure, upholding and expanding upon the Acting Secretary's earlier determination. ROP I at 107–113. Instead of giving plaintiff tenure, the Secretary of State confirmed a new three year untenured appointment for Mr. Bonilla which had begun in January, 1984.

The events of plaintiff's career following this appointment are both unclear and unfortunate. It appears that plaintiff's then-current assignment was terminated after only eight months—although his performance had been rated outstanding—and that he was asked to bid on an overseas assignment. While his first choice was not honored, a secondary request was granted and, in May 1984, he was assigned to a post in Tel Aviv, to begin in August. However, plaintiff never went to Tel Aviv.

---

**4.** The Board did not pass, at this point, on two other matters—promotion and attorney's fees. The attorney's fees issue was eventually settled between the parties. ROP I at 95–101. The promotion issue was not taken up by the Board until February 20, 1985, at which time it found, "there is no longer an issue in this case as to whether promotion is an appropriate remedy." ROP I at 21. The sole issue was the degree of the promotion.

Plaintiff requested that the Board grant him a promotion to Class FO–3 retroactive to October 1978 and a promotion to Class FO–2 retroactive to October 1983, a result he reached by identifying the present positions of the Foreign Service Officers in the 1973 class he entered with. The Board instead chose to compare plaintiff's career advancement to that of his 1973 class only after the 1976 year in which his grievances commenced. On this basis, the Board recommended that the plaintiff be granted promotion to Class FO–4 retroactive to 1978, and to Class FO–3 retroactive to 1981.

By letter dated March 22, 1985, the Secretary of State accepted the Board's recommendation on the promotion issue. ROP I at 15.

Following conversations with the incumbent in the Tel Aviv position, who was on his *first* tour of duty in the Foreign Service, plaintiff had second thoughts about the assignment and requested to have it rescinded, arguing that the position was too junior in rank. In the meantime, plaintiff had reapplied for tenure based on his purged performance file. The Tenure Board, in July, 1984, again refused to tenure him. Thus, plaintiff also wished to remain near Washington "to assist his attorney in legal proceedings necessary to ensure a long-term FS career, and to identify and interview with American employers outside the Service with whom he may continue his professional career in mid-life, if legal proceedings do not provide relief." Letter of Bridget R. Mugane to Michele E. Truitt, ROP I at 84. Taking a realistic view of his chances in the Foreign Service after his July tenure rejection, plaintiff also wanted to enroll in the Alternate Career Planning Program (ACPP), in Washington, which assists persons leaving the Foreign Service.

Despite these concerns of the plaintiff, the Department insisted that he accept the Tel Aviv post. Plaintiff then requested that the Grievance Board intervene on his behalf. Mr. Bonilla asked the Board to recommend to the Secretary that he not be assigned overseas until the question of his tenure was resolved by legal proceedings, including judicial review. ROP I at 67. Alternatively, he asked the Board to direct the Department to allow him to pursue the ACPP program for an eight month period. ROP I at 69. Should these requests fail, plaintiff asked the Board to insulate him from disciplinary action (including involuntary separation from the Service) by the Department pending the completion of his appeal on the promotion issue.

On October 10, 1984, plaintiff's requests were denied on the basis that the Grievance Board lacked jurisdiction over assignments unless they were alleged to be "contrary to law or regulation." ROP I at 29–35. Plaintiff made no such allegation and thus the Board found the assignment "not grievable." ROP I at 34.

Five days later, on October 15, 1984, plaintiff submitted his resignation requesting that it be made effective November 14, 1984. On the same date as his resignation, plaintiff filed still another grievance claiming his resignation constituted a constructive discharge. Before the November 14, 1984 effective date of his resignation, plaintiff requested that he be permitted to withdraw his resignation and be granted an unpaid leave of absence. On or about November 2, 1984, this request was rejected by the Department on the basis that a separation was already in effect. On November 27, 1984, plaintiff amended his formal grievance to add the charge of reprisal.

On August 15, 1985, the Grievance Board considered, as a preliminary matter, whether it had jurisdiction over plaintiff's claim that he was "constructively discharged." Record of Proceedings G–85–015–State–11 ("ROP–85") at 42–50. The Board concluded that it had no jurisdiction over Bonilla's reprisal claim, because "the claim of reprisal was *first* raised after the effective date of grievant's resignation, that is, when he was no longer a member of the Foreign Service and therefore was not entitled to file a grievance on the issue of reprisal." ROP–85 at 47. The Board then concluded, "there is no basis, on the facts of this particular case, on which we can act affirmatively on the issue of constructive discharge." ROP–85 at 48. It therefore dismissed plaintiff's grievance.

## II. JURISDICTION

Plaintiff seeks review of a final action of the Secretary of State and of the Foreign Service Grievance Board; jurisdiction is therefore proper in this Court pursuant to 22 U.S.C. § 4140 (1982), in accordance with the standards of Title 5 of the Administrative Procedure Act. 5 U.S.C. §§ 701 *et seq.* (1982).

## III. ISSUES

It is important as a preliminary matter to understand what is *not* at issue in this case—namely, whether or not the plain-

tiff is entitled to relief. The Grievance Board's findings, which are obviously entitled to great weight, clearly show that the plaintiff's rights have been repeatedly transgressed. Even the Secretary concurs in the determination that the plaintiff has not been treated fairly. ROP I at 112.

The central issue then is simply *what* relief plaintiff is entitled to receive. After an exceedingly thorough review of plaintiff's grievances, that covered a period of ten years, the Grievance Board found that the plaintiff was entitled to substantial relief and thus recommended that he be tenured and that he receive certain promotions. Indeed, the Grievance Board deliberated quite extensively to determine whether it had the authority to grant tenure, ROP I at 119–139, ROP I at 196–243; its determination that it had such authority has been widely cited, and uniformly approved. *See e.g., Daniels v. Wick*, 655 F.Supp. 26 (1985) ("Daniels").

Nevertheless, the Secretary of State declined to tenure the plaintiff based on his view that he lacked authority to entertain such a request from the Grievance Board. According to the Secretary, only the Tenure Board can make such a recommendation. Thus the *first*, and most important, issue before me is plaintiff's appeal of the March 16, 1984 final decision of the Secretary of State in which the Secretary refused to accept the Board's recommendation that the plaintiff be tenured.

A *second* issue is plaintiff's appeal of the February 20, 1985 final decision of the Board which recommended that he be granted promotion to new class FO–4 retroactive to 1978 and FO–3 retroactive to 1981 to remedy the harm to his career which commenced in 1976. *See* footnote 4, *supra.* The *third* and final issue is plaintiff's appeal of the adverse decision resulting from

his allegations both of reprisal and that his November, 1984, resignation from the service was in fact a "constructive discharge."

## IV. DISCUSSION

### A. Tenure

The issues on the tenure question are *first,* whether the Grievance Board can recommend tenure to the Secretary as a remedy for egregious Departmental errors; and *second* whether the Secretary can properly accept such a recommendation.

■ I am persuaded by carefully reasoned opinion of Judge Bryant in *Daniels v. Wick*, 655 F.Supp. 26 (1985) ("Daniels") that the Grievance Board can recommend tenure and that the Secretary of State can indeed act on such a tenure recommendation where the record before the Board is clear that the only way the aggrieved individual can adequately be made whole is by the granting of tenure. There are several reasons I am so persuaded.

1.

■ As Judge Bryant noted, the Department itself "acknowledged the Board's authority to recommend tenure in an earlier grievance proceeding." *Daniels* at 33. Specifically, in the *Ehrman* case, *Ehrman v. United States*, R.O.P. No. 6–81–005–State–4 (decided July 20, 1981), *appealed on other grounds*, C.A. No. 82–1984 (D.D.C. August 31, 1983), slip op., *vacated and remanded as compromised and settled*, C.A. No. 83–2169 (D.C.Cir. March 29, 1984), the Board recommended that Ehrman, a foreign service officer, be granted tenure. The Secretary of State accepted the Board's recommendation and tenured Ehrman.[5]

---

**5.** The government now attempts to distinguish the *Ehrman* case. In *Ehrman* the grievant was a foreign service officer whose original appointment was without time limitation under the Foreign Service Act of 1946. Mr. Bonilla, on the other hand, was, of course, a time limited appointment career candidate, subject to the provisions of Section 306 of the Foreign Service Act of 1980, 22 U.S.C. § 3946. However, I do not find § 3946 to be a bar to the Secretary's accepting a tenure recommendation from the Grievance Board, for the reasons stated below; thus the difference between this and the *Ehrman* case is without significance.

2.

Regardless of the Department's own acknowledgement of its ability to accept tenure decisions from the Grievance Board, though, Judge Bryant made a compelling independent assessment that the Board can recommend tenure and that the Secretary can act on such a recommendation. Judge Bryant found that the Board has the authority to *recommend* tenure to the Secretary pursuant to its power under section 1107(d) to order remedial action "that relates directly to promotion or assignment of the grievant or to other remedial action not otherwise provided for in this section." 22 U.S.C. § 4137(d) (1982).[6] In reaching this conclusion, Judge Bryant embraced the Board's own determination that it could recommend tenure, which, ironically, came as part of the proceedings in this case. *See Daniels* at 11, *citing In the Matter Between Victor J. Bonilla and Department of State*, R.O.P. No. G–83–025–State–16 at 6 (February 15, 1984). Both the Board and Judge Bryant found that the statutory language and the legislative history, as well as policy considerations, supported the conclusion that the Board could recommend tenure.

Judge Bryant went on to find that the officer to whom the Board made its recommendations—the head of the United States Information Agency—had the authority to accept tenure recommendations from the Grievance Board. The Agency in the *Daniels* case argued, as does the State Department here, that it could only accept tenure recommendations from a properly constituted Tenure Board. Judge Bryant found the government's argument to be "too narrow." *Daniels* at 16. After reviewing the legislative history of section 306 of the Foreign Service Act of 1980, 22 U.S.C. § 3946 (1982) (providing that tenure recommendations should come from [Commissioning and Tenure] Boards), and the policy considerations underlying the authority of Grievance Boards, Judge Bryant concluded, "Logically, if Congress intended to give the Board authority to recommend tenure, it assumed that the Secretary could implement the recommendation. Without such authority, a recommendation is ineffectual." *Daniels* at 17.

Judge Bryant carefully restricted the instances in which he thought that sidestepping the Tenure Board process would be appropriate to those in which the petitioner's rights were best safeguarded by the Grievance Board's recommendations. Accordingly, he concluded that "[a]lthough tenure recommendations by one's peers is a preferable system in the vast majority of cases, there are exceptional cases in which a prior taint may not be cured other than by a recommendation of tenure by authorities outside the peer group." *Daniels* at 17.

Mr. Bonilla's is such an exceptional case. Plaintiff first attempted to go through the ordinary channels to obtain tenure and was repeatedly unsuccessful despite the fact that *all* the members of the class with which he entered were tenured. He diligently sought to be tenured through the lateral entry channel and on two occasions—despite passing all of the requisite examinations—was rebuffed based on records which were supposed to have been expunged from his personnel file. To make matters worse, he was frequently shifted from assignment to assignment, leaving little time to prove himself on any given job. Nonetheless, his performance on those assignments he was permitted to

---

**6.** Actually, Judge Bryant held not only that the Board could *recommend* that the Secretary tenure a grievant, but more significantly that the Board had authority to *order* tenure on its own. This authority follows from Section 1107(b)(3) of the Foreign Service Act which grants the Board authority to "retain in the Service a member whose separation would be in consequence of the matter by which the member is aggrieved," 22 U.S.C. § 4137(b)(3) (1982), as well as from Section 1107(b)(6) of the Act which allows the Board to order appropriate remedial action under procedures agreed to by the Department and the exclusive [bargaining] representative. Nonetheless, Judge Bryant deferred to the Board's decision to *recommend* rather than *order* tenure, *Daniels* at 10, and he then proceeded to hold that the Board had the authority to *recommend* tenure, as well as to *order* it.

keep for more than several months appears to have been highly regarded.

Despite all of the aggravation and frustration, plaintiff, over a long number of years, displayed an amazing dedication to the Foreign Service by painstakingly working through the proper procedures to remedy the wrongs he encountered. His perseverance appeared to have paid off when, in two instances, the Grievance Board recommended tenure as the sole measure which would adequately remedy the years of harm done his career. However, on both occasions the Board's recommendations were rejected by the Secretary, who too narrowly construed his authority.

There simply comes a certain point where basic justice compels the conferring of tenure. This is especially true where, as in this case, the Grievance Board concludes and this Court finds that it is the only way that an egregious wrong can be righted.

3.

■ There exists a third factor in my decision that the Grievance Board can properly recommend tenure—beyond the *Ehrman* case in which the Secretary himself accepted a Board's tenure recommendation, and beyond Judge Bryant's analysis in *Daniels*—which is that in extraordinary circumstances such as these, the granting of tenure is necessary to eradicate prejudicial and repeated errors made by the Tenure Board.[7] The Grievance Board described how it can so act in its February 15, 1984 decision, "In recommending tenure here the FSGB [Foreign Service Grievance Board] has concluded that a C & T [Commissioning and Tenure] Board would have recommended the grievant for tenure but for the wrongs that occurred; by its recommendation the FSBG simply is placing the grievant—and the Secretary—in the positions they would have occupied but for the wrongful assignments and evaluations." ROP I at 135.

Congress itself had this function of the Grievance Board in mind when it established the extant tenure process. The House Committee Report which explains the requirement that tenure appointments be made on the basis of recommendations from the C & T Boards reads:

Section 306(b) states that decision by the Secretary whether or not to offer ... any career appointment shall be based upon the recommendation of boards composed entirely or primarily of career members of the Service who will evaluate the fitness and aptitude of the candidates for the work of the Service ... The committee believes that past practice has indicated that this procedure of evaluation by one's peers has been effective. *Together with the safeguards of the grievance procedure established in Chapter 11, this procedure helps to ensure that appointment decisions will not be arbitrary.*

H.R.Rep. No. 96–992, 96th Congress, 2d Sess. 1, Committee on Foreign Affairs, at 32 (1980) (emphasis added).

■ By contrast, acceptance of the Secretary's position would confer on the Tenure Board a status that would make it unanswerable to any authority. It could trample individual rights and be entirely arbitrary and capricious without there being any manner in which to restrain its excesses. In essence, shutting off the Grievance Board here would effectively insulate the Tenure Board's wrongfully repeated denials of tenure from any meaningful review.[8] Though I am cognizant of the principle that ordinarily Tenure decisions are not grievable, 22 U.S.C. § 4131(b)(2), where, as here, the tenure process itself has been so flawed, relief must be made available.

The Secretary has fairly suggested that such relief can be found through an additional time-limited appointment with the

---

7. I am aware Judge Bryant discussed this point in the *Daniels* decision. I single it out simply to emphasize its significance.

8. In fact, to accept the government's position in this case would effectively sanction a Tenure Board which could, for instance, deny tenure to those of a certain race, or gender, with complete impunity.

plaintiff then going back to the Tenure Board once again. ROP I at 112 ("... the remedy is not to abandon the tenuring process, but rather to make it work as it was designed to do ..."). While I am sympathetic to the Secretary's concerns, I simply do not find that such a remedy would be adequate in this case, where the plaintiff has repeatedly been returned to his non-tenured status without any real guidance as to what was expected of him before he could achieve tenure.

I am also concerned that the Grievance Board will be relegated to a lesser role if its thoughtful decision can be so easily frustrated by an interpretation of the law that would deny it the ability to ensure that substantive justice is done in deserving cases. It obviously takes a great deal of courage for the Grievance Board to engage in a dispute with the Secretary of State. Here it believed that the facts were so compelling that, even though its initial recommendation for tenure was rejected by the Secretary, it proceeded to resubmit that recommendation to him a second time.

Grievance Boards offer the only meaningful opportunity to obtain relief from extraordinarily prejudicial tenuring processes such as this one. I am of the opinion that Congress intended the Grievance Boards to have the authority to correct egregious tenure errors and thus that the Board's ability to do so must be protected. This can only be done if the Grievance Board has authority to provide the full range of remedial relief to correct prior wrongs.

### B. Constructive Discharge

In view of my decision on the tenure issue, I believe the constructive discharge and reprisal issues are moot.

### C. Promotion

■ With respect to the question of what other retroactive promotion plaintiff is entitled to, I am sustaining the Grievance Board's decision. I find that the Board's determination is amply supported by the record.

### V. DISPOSITION

■ For the above outlined reasons and within the factual setting of this case, the Secretary's determination that he could not accept the Board's tenure recommendation was "not in accordance with law," and therefore must be vacated. 5 U.S.C. § 706(2)(A) (1982).

I am mindful that the Secretary only ruled that he did not have the *authority* to grant tenure, without, apparently, considering the facts of this case; as I have corrected that legal determination, it would ordinarily be appropriate to remand to the Secretary to determine whether, given the authority to accept the Board's recommendation, he should use that authority to grant tenure *in this case. New England Coalition on Nuclear Poll v. N.R.C.,* 727 F.2d 1127 (D.C.Cir.1984); *Williams v. Washington Metropolitan Area Transit Commission,* 415 F.2d 922, 939–40 (D.C.Cir. 1968) (en banc), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969). However, given the facts of the case, and because I am convinced that the Board was absolutely correct in its determination that tenure is the only full remedy here, I am instead inclined to, and simply will, order the Secretary to follow the Board's recommendation to grant tenure. It is within my authority to do so and I believe this is one of the exceptional instances in which such an order is warranted.

I am also aware that the *Daniels* decision is on appeal and that defendants have asked the Court to delay resolution of this case pending that appeal. However, given the long and painful nature of plaintiff's career problems, I do not believe further delay would be appropriate. Moreover, this case can be decided regardless of the outcome of the *Daniels* appeal.

■ As a court of equity, I have the authority to directly order that the plaintiff be tenured. *See Ford Motor Company v. NLRB,* 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221 (1939) (acting within bounds of statute and without intruding on the administrative province, reviewing court may "adjust its

relief to the exigencies of the case in accordance with the equitable principles governing judicial action ..."), *Indiana & Michigan Elec. Co. v. Federal Power Commission,* 502 F.2d 336 (D.C.Cir.1974), *cert. denied* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424. "Tenure" obviously falls within the bounds of the statute which authorizes career appointments, and at this point, such an order would barely interfere with an administrative procedure that has been unable, despite a multitude of opportunities, to correct the egregious wrong done to the plaintiff.

Nonetheless, I am ordinarily reluctant to exercise that authority. However, it is appropriate to do so in this case. The plaintiff has met every requirement to obtain tenure except for receiving final approval from the Tenure Board. Each time he presented himself to the Tenure Board he was rejected. On two occasions, despite successfully completing an arduous oral and written examination, the BEX turned him down on a concededly improper basis. In large measure the decision was based upon information which appeared in an old file that had been ordered stricken from plaintiff's employment record. Here we have a tenure process that is simply out of control. To hold that the only body that has authority to grant tenure is an internal administrative organ of the Department of State which can exercise this life and death employment authority within its sole discretion would strip the plaintiff and other foreign service officers of very valuable constitutional rights.

Moreover, to deny plaintiff tenure once again and to reinstate him for yet another non-tenure position for a term of years would be a cruel act. Plaintiff has suffered enough indignity by having to scratch and claw for the limited relief he has obtained. Accordingly, I find that the only adequate remedy is to exercise my equitable powers and to uphold the Grievance Board's tenure recommendation.

Wherefore, after review of the record, and hearing argument from the parties, I am ordering:

*first,* that the plaintiff be reinstated to the Foreign Service as of November 14, 1984;

*second,* that the plaintiff be granted tenure in the Foreign Service;

*third,* that the Secretary and the Board determine what additional redactions of the record need to be made in order to ensure plaintiff's employment rights will not be jeopardized in the future; and

*fourth,* that the decision of the Grievance Board on the promotion issue, already accepted by the Secretary, be affirmed.

An appropriate order accompanies this Memorandum.