**PLATT COLLEGE OF COMMERCE, INC., Plaintiff,**

v.

**Lauro F. CAVAZOS, Secretary of Education, et al., Defendants.**

Civ. Action No. 89–2376.

United States District Court, D. Columbia.

June 12, 1992.

David H. Larry, Manatt, Phelps, Rorhenberg & Phillips, Wash., D.C., for plaintiff.

Jeffrey T. Sprung, Asst. U.S. Atty., Wash., D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, Senior District Judge.

Before the Court are cross-motions for summary judgment. For the reasons stated below, we will deny plaintiff's motion for summary judgment and grant defendants' motion for summary judgment.

Plaintiff Platt College of Commerce, Inc. ("Platt"), which has its main campus in St. Joseph, Missouri, is a for-profit provider of post-secondary educational courses. In addition to its campus programs, Platt offers drafting technology and paralegal courses off-campus for incarcerated students at nine correctional facilities in Missouri, Louisiana, and Kansas.

Platt is a participant in the Pell Grant financial assistance program, through which it awards federal grants administered by the United States Department of Education (the "Department") to its students. All Pell funds awarded by Platt to its students are ultimately received by

Platt as payment of its tuition and fees, and the Department reimburses Platt for all Pell Grants properly awarded. This dispute arises out of an administrative determination that Platt overpaid Pell Grants to some of its students in its prison extension programs.[1] Plaintiff challenges this determination.

The Pell Grant Program

The purpose of the Pell Grant Program is "to assist in making available the benefits of postsecondary education" by, *inter alia,* "providing [Pell] grants to all eligible students...." 20 U.S.C. § 1070(a) (1982). The statute requires the Secretary of Education (the "Secretary") to "pay to each eligible student ... for each academic year [2] during which that student is in attendance at an institution of higher education, as an undergraduate, a basic grant in the amount for which that student is eligible...." 20 U.S.C. § 1070a(a)(1)(A) (1982).

The size of a student's Pell Grant for an academic year is based upon three variables: the maximum grant for that year, the student's cost of attendance for that year, and the amount of funds appropriated to carry out the Pell Grant Program for that year. 20 U.S.C. §§ 1070a(a), (b) (1982). During the years at issue in this case, the statute specified that: (1) the amount of the basic grant for an eligible student for any academic year shall be $1800 less the amount of expected family contribution for that year, 20 U.S.C. § 1070a(a)(2)(A)(i) (1982), *modified by* Pub.L. 97–92, § 124, 95 Stat. 1197 (1981) *and* Pub.L. 97–377, § 101(e)(1), 96 Stat. 1897 (1982); and (2) the amount of a Pell Grant for any academic year shall not exceed 50% of the actual cost of attendance[3] for that year, 20 U.S.C. § 1070a(a)(2)(B)(i)(I) (1982).

The applicable regulation defines academic year as follows:

*Academic year:* (1) A period of time in which a full-time student is expected to complete the equivalent of at least two semesters, two trimesters or three quarters at an institution which measures academic progress in credit hours and uses a semester, trimester or quarter system; or

(2) A period of time in which a full-time student is expected to complete at least 24 semester hours of 36 quarter hours at an institution which measures academic progress in credit hours but does not use a semester, trimester or quarter system; or

(3) At least 900 clock hours of training for each program at an institution which measures academic progress in clock hours.

34 C.F.R. § 690.2 (1984). If the tuition and fees charged a student were for an educational program longer than or less than one academic year, an additional calculation (*i.e.,* a proration) is required by the regulations to determine the amount of those tuition and fee charges that pertained to an academic year. Under 34 C.F.R. § 690.55 (1984),

The cost of attendance for a student who is charged tuition and fees for a program whose length is greater than or less than the length of the academic year at the institution, is determined by adding—

(a) Tuition and fees $\times$ $\dfrac{\text{clock or credit hours in the academic year}}{\text{clock or credit hours in the program;}}$

(b) Room and board costs ...; and

(c) An allowance ... for books, supplies and miscellaneous expenses.

---

1. To the extent that some students were overpaid, Platt was improperly reimbursed by the Department. Such is the gravamen of this litigation.

2. The statute, named after Senator Claiborne Pell of Rhode Island, provides that "the term 'academic year' shall be defined by the Secretary by regulation." 20 U.S.C. § 1088(d) (1982).

3. Cost of attendance is determined pursuant to the provisions of 34 C.F.R. §§ 690.51–.57 (1984). The cost of attendance is generally the aggregate of tuition and fees, room and board, and a $400 allowance for books and supplies. *Id.* at § 690.51. For incarcerated students, of course, there are no room and board costs, and the books and supplies allowance is limited to $150. *Id.* at § 690.56.

Once the total amount of the Pell Grant is determined, the student's award for a payment period [4] must be computed under 34 C.F.R. § 690.65(a) (1984). This is generally done by dividing the total award by the number of terms in an academic year. *Id.*

**Platt's Computation and Disbursement of Pell Grants in Academic Years 1982–83 and 1983–84**

It is undisputed that the actual amount of fees and tuition for each of Platt's full-time incarcerated students was approximately $4000 per year, and that the $150 books and supplies allowance brought the cost of attendance to approximately $4150. Because 50% of the cost of attendance (*i.e.*, $2075) exceeded the $1800 ceiling on grant awards for the years in question, plaintiff determined that each otherwise eligible incarcerated student was entitled to an award of $1800.

At its main campus, Platt offered a 60-credit–hour program with an academic year consisting of three quarters. Memorandum of Platt College of Commerce, Inc. in Support of Motion for Summary Judgment ("Plaintiff's Motion") at 9. The extension programs provided to prisoners also consisted of 60–credit–hours but were designed to be completed in four quarters. *Id.* Nonetheless, Platt divided the scheduled Pell Grant to incarcerated students by three quarters, yielding three quarterly payments of $600 each. *Id.* at 10. Platt states that

> [i]f an incarcerated student attended four quarters in a single award year, the three payments were made for the first three quarters within the award year, and the student received no payment for the fourth quarter. If an incarcerated student's fourth quarter fell within a second award year, that student received a

payment of $600 for the quarter falling within the second award year.

*Id.* at 2 n. 1.

The Administrative Determination

In November, 1985, the Department's Office of Inspector General ("OIG") released a draft report summarizing an audit of the administration of federal student financial assistance programs at Platt College during academic years 1982–83 and 1983–84. Administrative Record ("AR"), Ex. 10, at Ex. 1 ("Draft Report"). The report estimated that Platt had overawarded approximately $143,000 in Grants "because Platt did not prorate tuition costs when calculating the cost of education for Pell Grants of incarcerated students that were involved in academic programs of 4 quarters in length." [5] *Id.* at 10.

The OIG's logic was as follows: (1) "Platt operated on the quarter system with 3 quarters established as an academic year" (*id.*); (2) Platt's programs for incarcerated students "were 4 quarters in length" (*id.*); (3) in regards to the incarcerated students, Platt incorrectly used "the full program tuition cost [as] ... the academic year cost of attendance instead of a prorated 75 percent [6] tuition cost" (*id.*); (4) in calculating cost of attendance for Pell Grant purposes, Platt "did not differentiate between the 4–quarter/60–hour courses and the 3–quarter/60–hour courses but used the full tuition cost in both cases" (*id.* at 11); (5) this calculation created a system where students in a 3–quarter schedule were "limited to three disbursements of one-third of a scheduled award spread over 1 or 2 award years, depending on when the student started; while a 4–quarter course student would be scheduled for four dis-

---

4. Under 34 C.F.R. § 690.3(e) (1984), if the institution uses semesters, trimesters, quarters or other academic terms, the payment period is the semester, trimester, quarter or other academic term.

5. The audit and reports covered many other issues in addition to Pell Grant payments made by Platt to incarcerated students, but all other issues were settled prior to plaintiff's appeal. *See* AR, Ex. 5 at 2.

6. The 75% figure was derived using the proration formula set out at 34 C.F.R. § 690.55 (1984). *See supra* at p. 4. Dividing the number of credits in the academic year (*i.e.*, three) by the number of credits in the program (*i.e.*, four), the multiplicand for the proration formula is .75, or 75%. The report acknowledged that quarters were being substituted for credit hours in the proration formula. Draft Report at 10–11.

bursements of one-third or one and one-third of a scheduled award" [7] (*id.*).

The OIG's Final Report was almost entirely identical to the Draft Report, with the only material difference being that the amount of overpayment was pegged at $143,617.[8] Memorandum of Points and Authorities in Support of Defendants' Cross-Motion for Summary Judgment ("Defendants' Motion") at Tab B, at 13–17. On March 26, 1987, the Department's Audit Review Branch's Final Determination accepted the OIG's findings for fundamentally the same reasons.[9] AR, Ex. 17 at 4–5.

On May 15, 1987, Platt requested a hearing to contest the liability finding. AR, Ex. 16. A hearing was conducted before Administrative Law Judge ("ALJ") Walter J. Alprin, and he affirmed the Final Determination in a decision dated March 24, 1988. AR, Ex. 5 ("ALJ Decision"). His reasoning did not differ materially from that of the Final Determination.

By letter dated April 12, 1988, Platt appealed the ALJ's decision to the Secretary. AR, Ex. 4. On November 23, 1988, the Secretary issued his November 17, 1988 Final Decision. AR, Ex. 2. In a brief decision, the Secretary affirmed the ALJ's findings of fact and conclusions of law and stated that "requiring full refund of the overpaid grant funds ... was not arbitrary, capricious or an abuse of discretion." *Id.* at 1.

Plaintiff filed a Complaint in this Court on August 24, 1989 seeking review of the Department's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Each party has filed a motion for summary judgment.

Standard of Review

A movant is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). Here, there are no material facts in dispute, only questions of law for the Court to address. Therefore, summary judgment is appropriate.

---

7. The OIG Report illustrated this situation with the following example:

> [W]hen calculating the expected disbursement for a $1,800 scheduled award, the expected disbursement for a 3–quarter program student would be $1,200 (2 awards of $600) if the student had already received 1 quarter's disbursement of $600 in a previous year. However, the same student in a 4–quarter program who had received one disbursement of $600 in a previous year would have a $1,800 expected disbursement (3 disbursements of $600) during the succeeding year.

> Draft Report at 11.

8. Plaintiff has not disputed this computation of its liability (if there is any liability) for overpayments.

9. The only new item referenced in the Final Determination is question 6–10 in the Department's Question and Answer (Q & A) Newsletter # 6, dated July 20, 1981. AR, Ex. 17 at 4. The full text of that question and answer is as follows:

Q. An institution operating on the quarter system defines the academic year as three quarters. For students who enroll for all four quarters, the institution calculates the cost of attendance based upon the cost for four quarters and disburses the [Pell Grant] award in four equal payments. Is this procedure correct?

A. No. An institution must define its academic year in a consistent manner and apply that definition consistently to all students enrolled in the same program of study. Given the entitlement nature of the Basic Grant Program, a student who attends full-time for the entire academic year should receive his/her entire Scheduled Award. Therefore, in this case, a full time student's award for each term should be one third of the Scheduled Award. If that student enrolls for four terms, (s)he may only be paid for the first three terms. The cost of attendance should also be calculated based on the number of terms in the academic year, regardless of the number of terms in which a student will be enrolled during the award year.

The question before the Court is whether the Secretary's decision violated § 706(2)(A) of the APA.[10] Under this section, an agency's final decision will be set aside if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

■ An agency is, of course, bound by its own regulations. *Pfizer, Inc. v. Heckler*, 735 F.2d 1502, 1507 (D.C.Cir.1984). However, where, as here, the challenge is to an agency's interpretation of its own regulations, it is well-settled that the agency's interpretation is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Indeed, where both the challenging party and the agency

> present plausible readings of the legislative text, th[e] court owes deference to the Secretary's interpretation.... The Secretary is emphatically due this respect when she interprets her own regulations.

*Secretary of Labor, Mine Safety and Health Administration, on behalf of Bushnell v. Cannelton Industries, Inc.*, 867 F.2d 1432, 1433, 1435 (D.C.Cir.1989); *see also United States v. Larionoff*, 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155–56, 53 L.Ed.2d 48 (1977) (since agency's interpretation is not plainly inconsistent with the wording of the regulation, it is due deference even though the regulation "contains a number of ambiguities"); *Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965) ("The Secretary's interpretation may not be the only one permitted by the language of the orders, but it is quite clearly a reasonable interpretation; courts must therefore respect it."); *Federal Labor Relations Authority v. United States Department of Treasury*, 884 F.2d 1446, 1454 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1055, 110 S.Ct. 863, 107 L.Ed.2d 948 (1990); *Hispanic Information & Telecommunications Network, Inc. v. FCC*, 865 F.2d 1289, 1296 (D.C.Cir.1989) ("An agency's interpretation of its own regulations will be accepted unless it is plainly wrong.").

On the other hand, a Court may not "affirm an agency's decision on any rationale other than it offers to explain its actions." *Reservation Telephone Cooperative v. FCC*, 826 F.2d 1129, 1134 (D.C.Cir. 1987) (citations omitted). Similarly, a Court may not rely on an agency's *post hoc* rationalizations to validate its action. *Reuters Ltd. v. FCC*, 781 F.2d 946, 951 (D.C.Cir.1986).

### The Secretary's Decision Was Not Arbitrary And Capricious

■ The gravamen of plaintiff's argument is that the Department impermissibly substituted "quarters" for "credit hours" in the proration formula.[11] As explained

AR, Ex. 7, at Ex. 9 at 65.

**10.** Count I of plaintiff's complaint states a claim under § 706(2)(A). The complaint contained three other counts, two of which alleged violations of plaintiff's procedural rights under the APA and the Fifth Amendment and the last of which requested relief from alleged decisions of the Secretary relating to academic years subsequent to those at issue here. The procedural claims were not even alluded to in plaintiff's motion or the accompanying briefs until plaintiff filed its *Second* Supplemental Memorandum, much too late to raise a new claim. Nothing in the record indicates that any of plaintiff's procedural rights have been violated. In addition, no actual decisions of the Secretary relating to years subsequent to those at issue here have been brought to the attention of the Court. Accordingly, the only count remaining is the challenge to the Secretary's decision under § 706(2)(A).

**11.** Two other bases are given for plaintiff's challenge under § 706(2)(A). The first was that "the Department's Decision failed to address ... the inconsistent 'application' of the Department's regulations by the OIG and the Department's Counsel." Plaintiff's Motion at 34. This argument is meaningless because the record does not reflect an instance where the Department has applied the regulations inconsistently. None of the decisions rendered during the administrative process adopted the incorrect analysis laid out in the Department's brief to which plaintiff refers. The Department is obviously under no obligation to harmonize an advocate's position in litigation with its consistent interpretation of a regulation. While plaintiff explains that "[v]arying interpretations of statutory authority from case to case is a hallmark of arbitrary and capricious conduct," Plaintiff's Motion at 32 (quoting *Daniels v. Wick*, 655 F.Supp. 26, 36 (D.D.C.1985), *rev'd*, 812 F.2d 729

above, Platt divided the scheduled grant ($1800) into three payments ($600 each). The Department contends that because the program for incarcerated students is four quarters in length, whereas the academic year was only three quarters long, the grants to incarcerated students should have been prorated. Plaintiff responds that the Department can only reach this result by ignoring the express language of the regulation which sets out the proration formula.

The Department's interpretation of 34 C.F.R. § 690.55 (1988), which sets out the proration formula, and its application of the formula in this case are not arbitrary and capricious. As quoted verbatim above, this section states that when the length of a program is greater than or less than the length of an academic year, the following formula is used as part of the cost of attendance calculation:

$$\text{Tuition and fees} \quad \times \quad \frac{\text{clock or credit hours in the academic year}}{\text{clock or credit hours in the program}}$$

34 C.F.R. § 690.55(a) (1984).

Plaintiff believes that in this case, the fraction should yield a quotient of one because it has a 60 credit academic year and the program for incarcerated students is also a 60 credit program. Plaintiff's Motion at 21. This analysis, however, does not capture the crucial fact that the program for incarcerated students is a different length from the academic year (four quarters versus three quarters, respectively) which is the condition that triggers § 690.55 in the first place. As the audit report correctly noted, Platt did not differentiate between its four quarter/sixty credit hour extension programs and its three quarter/sixty credit hour residential programs when calculating tuition and fee costs for the Pell Grants. Platt did, however, differentiate between the two types of programs in calculating and disbursing the grants, leading to three $600 grants per academic year for residential students and four $600 grants per academic year for extension program students. AR, Ex. 17 at 4.

Plaintiff then argues that the ALJ was incorrect in finding that Platt was "required to define an academic year as consisting of three quarters." ALJ Decision at 8; Memorandum of Platt College of Commerce, Inc. in Opposition to Defendants' Cross–Motion for Summary Judgment at 3–5. Even if this is a misstatement,[12] however, it constitutes harmless error. The fact is that Platt itself stated that its academic year was three quarters in length when, following the directions of 34 C.F.R. § 690.65(a)(3) (1984) to divide the Scheduled Pell Grant by the number of terms in the academic year, Platt divided its incarcerated students' grants by three. See Plaintiff's Motion at 10.

There can be no doubt that the statutory and regulatory scheme at issue here is designed to ensure that each eligible student get one Pell Grant per academic year. The statute states that the Secretary shall "pay to each eligible student ... for *each* academic year ... *a* basic grant...." 20 U.S.C. § 1070a(a)(1)(A) (1982) (emphasis added). A basic grant (which is simply another term for a Pell Grant, 20 U.S.C. § 1070a(a)(1)(C) (1982)) is limited to a specified amount for each academic year. 20

(D.C.Cir.1987)), plaintiff has failed to point out an instance where the Department has taken administrative action based upon a different interpretation of the regulation at issue here. A lawyer's incorrect analysis in the course of litigation will not suffice to prove such an inconsistency.

The second additional basis for plaintiff's challenge is that the Department impermissibly "based its disallowance, at least in part, on an informal policy statement which lacks the force and effect of law." Plaintiff's Motion at 34. The policy statement in question is an item in the Department's periodical "Question and Answer Newsletter" which addresses a factual setting which is arguably the same as that presented here. See AR Ex. 7, at Ex. 9 at 65. As plaintiff implicitly acknowledges, however, this item did not form the primary basis for any of the administrative decisions; it is merely evidence of the Department's consistent interpretation of its regulation.

12. *See* Memorandum of Points and Authorities in Support of Defendants' *Cross–Motion* for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment at 25–26 (arguing that the ALJ's statement was correct within the context of this case).

U.S.C. § 1070a(a)(2)(A)(i) (1982). The proration formula, 34 C.F.R. § 690.55 (1984), in conjunction with the formula for calculating the amount of a Pell Grant for each payment period, 34 C.F.R. § 690.65 (1984), clearly serves the purpose of dividing up one grant evenly across the academic year.

Under plaintiff's interpretation of the regulations, it would be able to grant its students and receive reimbursement for an amount in excess of one grant for a single academic year. The Department's interpretation, however, is consistent with the statutory language, yielding one grant per academic year. Its interpretation of the regulations and application of them in this case are not arbitrary and capricious.

Accordingly, defendants' motion for summary judgment will be granted, plaintiff's motion for summary judgment will be denied, and the case will be dismissed.